430 So.2d 31 (1983)
STATE of Louisiana
v.
Bennie G. SMITH.
No. 82-KA-0409.
Supreme Court of Louisiana.
February 23, 1983.
Concurring Opinion February 24, 1983.
Rehearing Denied May 13, 1983.
*34 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Cecelia A. Bonin, Julie Cullen, Rene Salomon, Asst. Dist. Attys., for plaintiff-appellee.
Milton Osborne, Jr., Baton Rouge, for defendant-appellant.
BLANCHE, Justice.
Defendant Bennie Smith was charged and convicted of aggravated burglary (La.R.S. 14:60) and forcible rape (La. R.S. 14:42.1). He was sentenced by the trial court to thirty years hard labor on the forcible rape conviction and ten years hard labor on the aggravated burglary conviction, to run concurrently. Defendant appeals advancing eleven arguments.[1]
*35 The state's account of the commission of the crimes is as follows:
On the morning of April 24, 1980, between nine and ten o'clock a.m., the victim answered a knock on her front door. At her front door was a man who represented himself as a census taker. The victim agreed to answer his questions, and the two spoke through the locked screen door. At the apparent conclusion of the questioning, the victim retreated to the rear of the house to care for her infant. Upon returning to the living room, she discovered the man at the door had somehow found his way into her home. At first the man stated he needed more information for the census but then he demanded money and started to walk toward the victim. She screamed once but her mouth was covered, and she was forced into the bedroom where she was raped.
After the act of rape was completed, the man left the house hurriedly. The victim threw on her robe and watched the assailant leave the house. She noticed his walk and profile. She then called her husband to tell him of the incident, and the police were notified when he arrived. A subsequent physical examination of the victim confirmed that she had had sexual intercourse within the last twelve hours.
The defendant was arrested on July 21, 1980 following a spontaneous encounter on the streets of Hammond. The victim, accompanied by her husband, saw a man whom she believed was the man who had raped her. After communicating the man's license plate number to the police, defendant herein was arrested. The Hammond Police Department conducted both a photo and physical lineup at which the victim identified the defendant.
At trial, the victim testified that she was certain it was the defendant who had entered her house and raped her. In addition, she made several positive in-court identifications.
The defendant testified in his own behalf denying he had committed the crimes and presented alibi witnesses to establish his whereabouts during the time the offenses occurred. Obviously rejecting the defense, the jury convicted defendant as charged.

ARGUMENT NO. 1

(Assignments of Error No. 1 and 2)
By these assignments, the defendant urges that the trial court erred by refusing to issue an order to compel the victim and her husband to submit to pretrial interviews. Defendant argues that since he did not have the information he would have obtained from such interviews, he could not intelligently conduct the voir dire examination, exercise peremptory challenges and formulate challenges for cause. Thus, defendant asserts that he was effectively denied to his right to full voir dire examination guaranteed by La. Const. art. 1, § 17.
Prior to trial, the state advised the victim that she could speak to defense counsel if she so desired. She declined. On the first day of trial, prior to selecting the jury, the defendant moved for the court to issue an order compelling the victim to submit to an interview. Out of fairness to the defendant, the trial judge stated that he would contact the victim before ruling on the motion and ask her if she would agree to be interviewed. The victim refused the judge's request. The prosecutor also called the victim to ask if she would answer specific questions posed by defense counsel. Although the victim again refused to be interviewed, she did state that she had moved to Hammond ten months before the incident and had never worked or attended school in the area.
Defense counsel's argument, while novel, is unfounded. This court has held that the witness alone shall decide whether he or she shall speak to opposing counsel. State v. Harris, 367 So.2d 322 (La.1979); State v. Hammler, 312 So.2d 306 (La.1975). Defense counsel attempts to transform the right to full voir dire examination guaranteed by La. Const. art. 1, § 17 into a general right to pretrial discovery. Voir dire examination is not a discovery right, but a trial right. See State v. Straughter, 406 So.2d 221 (La.1981); State v. Monroe, 329 So.2d 193 (La.1975). Its purpose is to afford the *36 defendant wide lattitude in questioning prospective jurors in order that the defendant may intelligently exercise the substantial right to exercise peremptory challenges or challenges for cause. State v. Holmes, 347 So.2d 221 (La.1977); State v. Monroe, 329 So.2d 193 (La.1976). The right to full voir dire examination, a trial right, cannot be extended to compel state's witnesses to submit to pretrial interviews.

ARGUMENT NO. 2

(Assignments of Error No. 3 and 29)
Several months before trial, the state filed a motion for notice of alibi in accordance with La.C.Cr.P. art. 727. The defendant did not respond, and, consequently, the state filed a motion to compel compliance. After a hearing on the motion, the court ordered the defendant to furnish the state with its notice of intent to offer an alibi. Two weeks before trial, the defendant did send the state written notice of the witnesses he planned to call to support his alibi. At no time before or during trial did the prosecution reciprocate by serving the defendant with written notice that listed the witnesses it intended to rely upon to establish the defendant's presence at the scene of the offense or to rebut testimony of the defendant's alibi witnesses.
At trial, the prosecution called the victim to testify. Defense counsel objected and asked the court to exclude the testimony of the victim on the basis that she was an alibi witness, and the state failed to serve notice, as required by La.C.Cr.P. art. 727, that it intended to rely upon the victim's testimony establishing the defendant's presence at the scene of the offense. The trial court overruled the motion stating that the purpose of art. 727 was to prevent surprise. Here, the defense was not surprised by the victim's testimony.
By these assignments, the defendant urges that the trial court committed reversible error in permitting the victim to testify following the state's noncompliance with the notice of alibi discovery provisions, namely art. 727(B).
We assume, without deciding, that art. 727 requires the state to furnish the defendant with written notice of its intent to use the testimony of the victim of a rape to establish the defendant's presence at the scene of the offense. Even so, we do not find that the trial judge abused the discretion afforded to him in La.C.Cr.P. art. 727(D) by allowing the victim to testify.
The factors to be considered in determining whether the trial court properly exercised its discretionary power to exclude undisclosed alibi evidence were enumerated in United States v. Myers, 550 F.2d 1036 (5th Cir.1977).
[A] district court could consider (1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant's guilt, and (5) other relevant factors rising out of the circumstances of the case. Cf. Advisory Committee Notes on rule 16 of the Proposed Rules of Criminal Procedure, 39 F.R.D. 69, 178 (1966). (footnote omitted). 550 F.2d at 1043. State v. Brown, 414 So.2d 689 (La.1982). State v. Bias, 393 So.2d 677 (La.1981).
Here, there was no prejudice resulting from the state's failure to disclose the victim's name and address in a written notice of alibi. The defendant knew the name of the victim eleven months before trial, for it was included in the bill of information. Nine months before trial, the defendant was aware of the allegations of the victim, for Sargeant Domiano testified at the preliminary examination as to the details of the offenses related to him by the victim. Furthermore, since the victim refused on several occasions to submit to a pretrial interview, the defendant cannot contend that he was deprived of his opportunity to interview the victim. In short, the defendant has failed to show that he suffered prejudicial surprise from the use of unexpected testimony. United States v. Portillo, 633 F.2d 1313 (9th Cir.1980).

*37 ARGUMENT NO. 3

(Assignments of Error No. 4, 5 and 27)
The defendant maintains that the trial court erred in refusing to quash the petit jury venire. He alleges that the high absenteeism of prospective jurors and the prosecutor's systematic exclusion of blacks from the jury panel through the use of peremptory challenges deprived him of a jury composed of a fair cross-section of the community.
A defendant is not denied equal protection by the state's use of peremptory challenges against blacks unless there is systematic exclusion of blacks over a period of time. State v. Straughter, 406 So.2d 221, 222 (La.1981); State v. Allen, 380 So.2d 28 (La.1980); State v. Washington, 375 So.2d 1162 (La.1979). The burden is on the defendant to establish a prima facie case of such exclusion. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); State v. Allen, 380 So.2d 28 (La.1980).
The trial judge in this case granted an evidentiary hearing to the defendant to allow him to make a prima facie showing of systematic exclusion. At the hearing, defense counsel attempted to show that the prosecutor had systematically excluded blacks through the use of peremptory challenges in the present trial and the first trial of this same case, which had ended in a mistrial.
We agree with the trial court that the defendant failed to establish a prima facie case of systematic exclusion of blacks over a period of time. The only evidence offered by the defense at the hearing which even remotely suggests systematic exclusion consisted of the conclusory statements by two witnesses, one of whom was defense counsel, that the prosecutor had exercised a "substantially disproportionate" number of peremptory strikes to exclude blacks in the first trial of this case. Neither of these witnesses, however, could recall the specific number of peremptory challenges used by the prosecutor to exclude blacks in the first trial. The record, therefore, does not "... with any acceptable degree of clarity, show when, how often, and under what circumstances the prosecutor alone has been responsible for striking ..." blacks from petit jury panels in Tangipahoa Parish. Swain v. Alabama, 380 U.S. at 224, 85 S.Ct. at 838.
Defendant further contends that because 50 of 130 prospective jurors composing the petit jury venire were either excused or absent, he was deprived of a trial by jury composed of a fair cross-section of the community. This contention has no merit. As stated in State v. Coleman, 390 So.2d 865 (La.1980):
"No evidence (except the fact of high absenteeism) was adduced to support this contention. When allegations of prejudice are not substantiated by evidence offered as proof of the fact, this court will not overturn the trial judge's ruling." (citations omitted)

ARGUMENT NO. 4

(Assignments of Error No. 6, 30(c), 31(c))
The defendant next argues that the trial court erred in denying his challenge for cause of a prospective juror on the grounds of (1) racial prejudice and (2) bias arising out of her relationship with a law enforcement official. Specifically, the defendant urges that the juror's opposition to interracial marriage or interracial sexual relationships constituted sufficient grounds for a challenge for cause. Further, the defendant claims that the juror's daughter was married to an unspecified "relative" of an officer engaged in the investigation of the crime.
The juror in question was a forty-seven year old mother of three who worked part-time as a bookkeeper and office worker. On voir dire examination by defense counsel, the juror admitted her opposition to interracial marriages and interracial sexual relationships. Her feelings were limited to members of her own family and her opposition did not include "socializing" with members of another race. She stated further that she had friendly working relationships with blacks. On her ability to give the defendant a fair trial, the juror testified as follows:
* * * * * *

*38 "Q: Do your feelings, are your feelings toward black people such that you cannot give the defendant, Bennie Smith, a fair trial?
A: No, my feelings are not like that.
Q: Are your feelings so strong that you feel that you cannot give him the presumption of innocence that is his right?
A: No.
Q: Are your feelings so strong that you would convict him because he is a black man accused of raping a white woman?
A: No."
* * * * * *
The trial court held that there was no basis for disqualifying the juror since she could fairly and impartially judge the matter.
La.C.Cr.P. art. 797 provides:
"The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, amarriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;"
* * * * * *
As a prerequisite to challenging on appeal improper denial of a challenge for cause, the defendant must have exhausted all of his peremptory challenges. State v. Albert, 414 So.2d 680 (La.1982); State v. Monroe, 366 So.2d 1345 (La.1978). Here, the defendant had exhausted all twelve peremptory challenges prior to the time the juror at issue was called.
A challenge for cause should be granted even where a prospective juror declares impartiality if the juror's testimony on voir dire reveals the existence of facts from which bias, prejudice, or inability to render judgment according to the law may be reasonably implied. State v. Albert, 414 So.2d 680 (La.1982); State v. Lewis, 391 So.2d 1156 (La.1980); State v. Monroe, 366 So.2d 1345 (La.1978). However, a prospective juror's negative attitudes toward racial intermarriage or social preferences do not necessarily reflect upon his or her ability to judge freely and fairly a black defendant. The true test of a juror's qualification to serve is his or her ability to judge impartially based on the evidence adduced at trial, as gleaned from the totality of responses given at voir dire. State v. Williams, 410 So.2d 217 (La.1982); State v. McZeal, 352 So.2d 592 (La.1977), reversed on other grounds on rehearing.
We are of the opinion that the juror's responses as a whole indicate that she could render judgment impartially based solely on the evidence adduced at trial. Her views on interracial marriage and sexual relations were limited to her and her family, and she remained firm in her conviction that she could nevertheless give the defendant a fair trial.
The defendant also asserts that the same juror was biased due to her relationship to Sergeant Domiano, one of the investigating officers in the case.
It is well-settled that mere relationship of a prospective juror to a law enforcement officer is not of itself grounds for cause. The question is whether the juror can assess the credibility of each witness independent of his occupation. Such determinations are within the great discretion of the trial judge and will not be overturned absent an abuse of that discretion. State v. Heard, 408 So.2d 1247 (La. 1982); State v. Sonnier, 379 So.2d 1336 (La. 1980); State v. Qualls, 353 So.2d 978 (La. 1977).
*39 Here, defense counsel never established that a relationship did exist between the juror's daughter and a police officer. The juror only stated that her daughter was married to a man named Domiano who worked in a grocery store. Even if it could be inferred that her testimony established the existence of a relationship, the defendant has made no showing that the juror was incapable of serving impartially. Under these circumstances, the trial court did not abuse its great discretion in denying the challenge for cause.

ARGUMENT NO. 5

(Assignment of Error No. 7)
Defendant complains that the trial court erred in limiting him to only twelve peremptory challenges. More specifically, the defendant urges that joinder of the two charges against him, aggravated burglary and forcible rape, should entitle him to twenty-four peremptory challenges.
Prior to 1975, these two offenses could not have been properly joined. La.C.Cr.P. art. 493 read at that time as follows:
"No indictment shall charge more than one offense, except as otherwise provided in this Title, but the same offense may be charged in different ways in several counts."
Effective in 1975, art. 493 was amended to provide:
"Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial."
La.C.Cr.P. art. 799 states:
"In trials of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges, and the state twelve for each defendant. In all other cases, each defendant shall have six peremptory challenges, and the state six for each defendant."
Art. 799 read the same way prior to the 1975 amendment to art. 493, and the defendant argues that if the legislature had intended that he not be afforded twelve peremptory challenges per offense, it would not have amended art. 799 to so provide.
Defendant's interpretation of art. 799 fails to take into account the simple and express wording of the provision. Art. 799 expressly provides for twelve peremptory challenges in "trials" of offenses punishable by death or necessarily at hard labor. The defendant reads too much into the failure of the legislature to amend art. 799 at the time it amended art. 493 to allow joinder of offenses. In our opinion, the reason for the failure to amend art. 799 is simple: The legislature had, by art. 799, expressly limited a criminal defendant to twelve peremptory challenges per trial. No amendment was necessary, for art. 799 speaks plainly to art. 493 in either its past or present form. If defendant felt prejudiced by the joinder of offenses in this case, a motion for severance was the proper remedy. La.C.Cr.P. art. 495.1.

ARGUMENT NO. 6

(Assignments of Error No. 8, 13 and 28)
By these assignments, the defendant contends that he was prejudiced by the state's untimely disclosure of a police offense report and a police dispatcher log, both of which were alleged to contain exculpatory information.
Several months before trial, on October 27, 1980, defense counsel filed a motion for discovery. Included within that motion were the following requests which are pertinent to these assignments of error:

2.
The State should be ordered to inform Defendant of the existence of and permit Defendant to inspect, copy, examine, test scientifically, photograph, and otherwise reproduce books, papers, documents, photographs, tangible objects, building, places or copies or portions thereof, which *40 are within the possession, custody, or control of the State, and which:
(a) are favorable to the Defendant and which are material and relevant to the issue of Defendant's guilt or punishment, or
(b) are intended for use by the State as evidence at the trial, or
(c) were obtained from or belong to the Defendant.
* * * * * *
9.
The State should be ordered to advise Defendant of the names, addresses and job titles of all law enforcement personnel who disseminated information to he mass media regarding these offenses, and State is asked to produce in writing the contents of all such information.
Discovery request # 9 was prompted by a newspaper article appearing in the Hammond Daily Star on May 1, 1980 that had reported the rape at issue in this case. In the article, a description was given of the "suspect" in the ongoing investigation. That description, which was said to have been provided by Sergeant Feder of the Hammond City Police, does not match the defendant.[2]
The state answered the defendant's discovery request # 2 by stating that it was "not in the possession of any evidence favorable to the defendant." With regard to request # 9, the State argued that the defendant was not entitled to this information.
At the hearing on the discovery motion, defense counsel argued that he was entitled to the information given by the police to the Hammond Daily Star newspaper reporter who wrote the May 1, 1980 article. He contended that he needed the information to determine how the police obtained the description. Since identity was a key issue in the case and the defendant did not fit the description in the newspaper, defense counsel asserted that this information was material and could "create a reasonable doubt that would not otherwise exist." The trial court, however, refused to compel the state to disclose this information. Defense counsel did not request an in camera inspection of the information.
Shortly before trial commenced, Sergeant Feder revealed to both the prosecutor and defense counsel that the information he had provided to the press had been taken from the offense report. With this knowledge, defense counsel asked the court to issue an instanter subpoena duces tecum to require Feder to produce the offense report. The state opposed the issuance of the subpoena on the grounds that the offense report was not discoverable under La.C.Cr.P. art. 723. The court agreed with the state and refused to issue the subpoena. Again, the possibility of an in camera inspection was not raised by defense counsel.
At trial, Officer Judy Warren of the Hammond City Police was one of the witnesses called to testify on behalf of the state. On the day of the rape, Warren worked as a police dispatcher. She stated on cross-examination that her report (log) indicated that one of the investigating officers had called in a description of the suspected rapist. The description written in the log and testified to by Warren does not match the defendant.[3] The state introduced Officer Warren's log into evidence.
Officer Brown testified for the state that he was one of the officers who had investigated the rape, and he had radioed the description of the suspect to the dispatcher.
*41 Brown stated that he had not spoken to the victim, but had received the description from the victim's friend. He later wrote this description in the offense report. Officer Brown could not remember the name of the victim's friend who furnished him with this information.
Once the state rested its case, defense counsel moved for a mistrial, one basis of which was the state's failure to provide him with the offense report and dispatcher's log. The defendant argued that the discovery articles in the Louisiana Code of Criminal Procedure as well as Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), mandated the disclosure of such exculpatory evidence. In denying the motion for mistrial, the court noted that the defendant knew about the information and was able to present it to the jury and thus was not prejudiced by the state's late disclosure.
Officer Brown was called to the stand once again during the presentation of the defendant's case. This time Brown brought with him the offense report, and defense counsel successfully introduced that report into evidence. The description in the offense report is very similar to that written in Officer Warren's log and thus does not match the physical characteristics of the defendant.[4] Brown testified at this time, however, that the description in the report was amassed from statements by the victim and the victim's friend.
The defendant's initial argument is that the trial court committed reversible error in refusing to compel the state to disclose all information and documents Sergeant Feder relied upon in conveying information to the Hammond Daily Star concerning the offense (discovery request # 9).
The trial court ruled that the information sought by the defendant in request # 9 was not discoverable. We agree with the defendant that the trial committed error by so ruling.
The general rule set forth in our discovery articles, specifically La.C.Cr.P. art. 723, is that reports or documents made by the district attorney or by an agent of the state in connection with the investigation of the case cannot be discovered. However, La.C.Cr.P. art. 723 lists several articles which contain exceptions to that rule. Of concern in this case is the exception included in La.C.Cr.P. art. 718. Subsection (1) of that article provides that if the reports or documents are favorable to the accused and are material and relevant to the issue of guilt or punishment, the court, upon request by the defendant, shall order the district attorney to permit the defendant to inspect or examine the document or reports.
Without question, the information sought by the defendant was material and relevant to the issue of the guilt of the accused. The victim of the rape was the sole eyewitness. Her identification of the defendant was the critical link in the prosecution's case. The Hammond Daily Star article seemed to infer that the victim may have provided the police with a different description of the assailant immediately following the rape. Without the document (later learned to be the offense report) relied upon by the police in communicating this description to the media, the defendant could not effectively present to the jury the possibility of the victim's misidentification of the defendant. The information bore directly on the reliability of the key state witness and was thus discoverable under C.Cr.P. art. 718(1). By not compelling the state to disclose such information, the trial court violated the mandatory language in La.C.Cr.P. art. 718.
Nevertheless, we find that the trial court's mistake was harmless error. Prior to trial, the defendant learned from Sargeant Feder that the description given to the media had been obtained from the offense report. At trial, the defendant was able to examine Sergeant Feder as well as Officer Brown, the one who wrote the offense report. The report itself was introduced *42 into evidence by the defendant. Therefore, the jury was fully aware that the victim may have misidentified the defendant, and no prejudice resulted to the accused.[5]
The defendant next argues that the trial court erred in failing to grant his motion for mistrial and motion for new trial, for the state violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) by withholding the police log and the offense report, both of which contain exculpatory information in the form of a misdescription of the defendant.
In Brady v. Maryland, the United States Supreme Court held that the state, upon request, must disclose evidence favorable to the accused where it is material to either guilt or punishment irrespective of the good faith or bad faith of the prosecution. The Brady rule has been extended to encompass cases in which the nondisclosed evidence pertains to the reliability of key state witnesses. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); State v. Davenport, 399 So.2d 201 (La.1982); State v. Curtis, 384 So.2d 396 (La.1980). Brady is concerned not with the state or federal discovery statutes, but with the defendant's right to a fair trial mandated by the Due Process Clause of the Fifth and Fourteenth Amendments. United States v. Agurs, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976).
As stated previously, we find that the offense report which contained a misdescription of the defendant was exculpatory and material, for it concerned the reliability of the victim, a crucial state witness. We assume, for the purposes of argument, that the police log was also Brady material.
The case at bar, however, is distinguishable from Brady, for we do not have a situation where withheld information was discovered only after conviction, but one where the exculpatory evidence became available to the defense during trial. See United States v. Kaplan, 554 F.2d 577 (3rd Cir.1977). Not all cases involving late disclosure of exculpatory evidence result in reversible error. We must determine whether the late disclosure so prejudiced the defendant that he was denied his constitutional right to a fair trial. State v. Arnaud, 412 So.2d 1013 (La.1982); State v. Roussel, 381 So.2d 796 (La.1980); State v. Manning, 380 So.2d 46 (La.1980).
We find, in this case, that the state's untimely disclosure of the offense report and the police log did not so prejudice the defendant as to deny him a fair trial. Both the offense report and the police log were submitted into evidence and brought to the attention of the jury. Officers Warren and Brown, who wrote the description in their respective reports, were fully cross-examined by defense counsel as to these reports. Moreover, the victim was called by the state as its last rebuttal witness. She reasserted that she had given a description to the officers which matched the defendant. However, rather than cross-examining the victim and using the police log and offense report, which were already in evidence, to question the certainty of her identification, defense counsel chose not to ask her any questions.
We do not approve of untimely disclosure of exculpatory information by the state. Late disclosure invites trial delay and risks reversal. State v. Roussel, 381 So.2d 796 (La.1980). Nevertheless, we conclude that the trial court did not abuse its discretion in denying the defendant's motion for mistrial and the defendant is not entitled to a new trial on this issue, for the defendant was not deprived of a fair trial by the state's late disclosure of exculpatory evidence.[6]

*43 ARGUMENT NO. 7

(Assignment of Error No. 9)
The victim selected the defendant's picture from a photographic lineup consisting of five photographs. All five photographs were admitted into evidence over defense objection. Defendant contends by this assignment that the trial court's decision to allow the photos into evidence resulted in reversible error for two reasons. First, he asserts that the photos used in the lineup were unduly suggestive and denied him due process. Second, he argues that the prosecutor did not lay an adequate foundation for the admission of the photos.
Photographs employed in a lineup are suggestive if they display the defendant so singularly that the witness's attention is unduly focused upon the defendant. State v. Robinson, 386 So.3d 1374 (La. 1980); State v. Guillot, 353 So.2d 1005 (La. 1977). Strict identity of physical characteristics among the persons depicted in the photo array is not required. All that is required is sufficient resemblance to reasonably test identification. State v. Guillot, 353 So.2d 1005 (La.1977); State v. Anthony, 347 So.2d 483 (La.1977).
We have viewed the photographs used in the lineup in this case and do not find them to be suggestive. The photographs depict men with similar facial hair, facial features, skin color and complexion. Further, there are no distinguishing marks on any of the photographs.
The defendant's second contention is that the state failed to lay an adequate foundation for the admission of the photographs.
We have stated that to admit demonstrative evidence at trial, the law requires that the object be identified. State v. Moore, 419 So.2d 963 (La.1982); State v. Drew, 360 So.2d 500 (La.1978). This identification can be visual, that is, by testimony at trial that the object sought to be introduced into evidence is the one related to the case. State v. Robertson, 358 So.2d 931 (La.1978); State v. King, 355 So.2d 1305 (La.1978). A sufficient foundation has been laid for the admission of demonstrative evidence if it has been established that it is more probable than not that the object is the one connection with the case. State v. Sharp, 414 So.2d 752 (La.1982); State v. Davis, 411 So.2d 434 (La.1982).
We find that the state did lay an adequate foundation for the admission of the photos by Sergeant Domiano's visual identification. Domiano testified that he presented the photo array to the victim on July 24, 1980. He further stated that the photographs introduced into evidence were the same ones that he showed to the victim on July 24.

ARGUMENT NO. 8

(Assignment of Error No. 14)
Defendant assigns as error the trial court's denial of his motion for mistrial which was based on the harassment of a defense witness.
During the trial, defense counsel moved for a mistrial on the basis that one of the witnesses he intended to call, Floretta Sue Miller, had received threatening phone calls. A hearing on the motion was held outside the presence of the jury. Miller testified at that hearing that she had been the recipient of several phone calls warning her not to testify. The trial court, after hearing the evidence presented, denied the mistrial motion finding no showing of prejudice by the defendant.
Defendant argues that the trial court's denial of his motion for mistrial was erroneous. He contends that Miller's testimony was affected by the threatening phone calls as evidenced by her lapses in memory on the stand.[7]
*44 La.C.Cr.P. art. 775 provides that a mistrial may be ordered when prejudicial conduct outside the courtroom makes it impossible to obtain a fair trial. Mistrial is a drastic remedy and should be declared only when unnecessary prejudice results to the accused. State v. Alexander, 351 So.2d 505 (La.1977); State v. Governor, 331 So.2d 443 (La.1976). The determination of whether prejudice has resulted lies within the sound discretion of the trial judge. State v. Haynes, 339 So.2d 328 (La.1976).
We find that the trial court did not abuse its discretion in denying the defendant's motion for mistrial. Miller clearly stated that the phone calls would have no effect on her testimony. She attributed her poor memory to "medication" she had been taking for the past several months. Miller's mother corroborated the fact that her daughter was on "medication" due to her recent operation. Consequently, no showing was made by the defendant that he was prejudiced by the threatening phone calls to Miller.

ARGUMENT NO. 9

(Assignment of Error No. 15)
Defendant contends that the trial court erred in allowing the prosecutor to cross-examine the defense's character witnesses about their knowledge of previous arrests of the defendant.
The record indicated that defense counsel called two character witnesses to testify as to the good reputation of the defendant in the community. On cross-examination, the prosecutor was permitted, over defense counsel's objection, to ask each character witness if he had heard that the defendant had been arrested previously of attempted forcible rape, aggravated rape and aggravated burglary.
Defendant argues that the law forbids a prosecutor to cross-examine a character witness as to whether he has heard of the defendant's previous arrests. His contention is without merit. It is well-settled in Louisiana that it is not reversible error for the prosecutor to question a character witness about his knowledge of prior arrests of the defendant.[8]State v. Johnson, 389 So.2d 372 (La.1980); State v. Harvey, 329 So.2d 731 (La.1976); State v. Banks, 307 So.2d 594 (La.1975).
The defendant also contends that by State v. Ledet, 345 So.2d 474 (La.1977), the trial court must weigh, before it can admit evidence of prior arrests, the probative value of such evidence against the prejudicial effect. State v. Ledet, however, did not involve the cross-examination of a character witness but concerned the introduction of other crimes evidence to show intent under La.R.S. 15:445 and 446.

ARGUMENT NO. 10

(Assignments of Error No. 19 through 26)
By these assignments, the defendant contends that the trial court erred in denying his motion for acquittal and his motion for new trial wherein he argued that the evidence was insufficient to convict him of the crimes of forcible rape and aggravated burglary.
Initially, we note that the motion for acquittal is properly made only when the case is tried before a judge alone. La.C.Cr.P. art. 778; State v. Vaccaro, 411 So.2d 415 (La.1982); State v. Middlebrook, 409 So.2d 588 (La.1982). Since the present case was tried before a jury, this court will treat the acquittal motion as one for a new trial. State v. Vaccaro, 411 So.2d 415 (La. 1982); State v. Brown, 395 So.2d 1301 (La. 1981).
In reviewing the denial of a new trial based upon sufficiency of the evidence we employ the standard articulated by the United States Supreme Court, which is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 *45 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (La. 1982); State v. Brady, 414 So.2d 364 (La. 1982).
We find that the evidence, when considered in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact beyond a reasonable doubt that the crimes of aggravated battery and aggravated rape had been committed in this case. The victim's testimony establishes that a strange man posing as a census taker, had entered her house even though the screen door was locked. She further testified that once inside the house, the man asked her a few questions, grabbed her from behind, pushed her into the bedroom, and forced her to engage in sexual intercourse. When questioned as to whether she resisted, the victim responded that she was worried that if she fought back, both she and her baby would have been killed. The fact that the stranger had entered through the locked screen door was corroborated by the victim's husband who testified that he had observed that the screen on the door had been torn. Dr. Staggers, who conducted a physical examination of the victim on the day of the rape, confirmed that intercourse had occurred by testifying to the presence of 80% motile sperm. The doctor also stated that he found a small tear between the victim's vaginal entry and anus which was consistent with forcible entry.
The key issue in this case, however, was not whether the crimes had been committed, but whether the defendant was the person who committed them. Employing the standard set forth in Jackson v. Virginia, the state was required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Long, 408 So.2d 1221 (La.1982).
At trial, the victim stated that her encounter with the defendant began between 9:20 and 9:30 in the morning on April 24, 1980 and ended twenty to thirty minutes later. When the assailant left, she threw on her robe and watched him from her front door. She observed his distinctive walk. The victim further testified that she gave a description of the assailant to the police immediately following the rape. This description matched the defendant. Three months later, the victim spotted the man who had raped her, and the car driven by this man was traced to the defendant. Subsequently, the victim identified the defendant at both a photo lineup and a physical lineup. In addition, she made several positive in-court identifications and testified that she had "no doubt" that the defendant was the rapist.
Sergeant Domiano confirmed that the victim had given him a description of the assailant on the day of the offense, and that description matched the defendant. Officer Brown, who was also investigating the rape, testified that he was given a description which did not match the defendant. It is noteworthy, however, that Officer Brown initially testified that he had received the description from the victim's friend. Later, he testified that he was "pretty sure" the description was given by the victim.
The defense offered alibi testimony to account for the defendant's whereabouts on the morning of the offenses. However, the three alibi witnesses admitted that they had not seen the defendant from around 9:15 a.m. to 9:45 a.m. which was the approximate time that the offenses occurred. The defendant testified that he had gone to Hammond Motors to check on his car and then had called on several customers during the time the offenses were said to have occurred. He further stated that he had talked to Joey Blades at Hammond Motors. Joey Blades later testified, however, that he was not with the defendant on the morning of April 24, 1980.
We are convinced that the state negated any reasonable possibility of misidentification. Both before and during trial, the victim identified the defendant as the perpetrator of the offenses. Moreover, the defendant's alibi was not supported by the evidence. We conclude, therefore, that the evidence viewed in the light most favorable to the prosecution proves beyond a reasonable doubt that Bennie Smith committed the offenses for which he was convicted.

*46 ARGUMENT NO. 11

(Assignments of Error No. 32, 33 and 34)
The trial judge imposed a sentence of thirty years hard labor for the defendant's conviction of forcible rape. In addition, the defendant was ordered to serve ten years hard labor for his aggravated burglary conviction to run concurrently with his sentence for forcible rape. Defendant asserts, by these assignments, that the sentences imposed by the trial court are excessive in violation of La. Const. art. 1, § 20.
Our Louisiana constitution art. 1, § 20 protects a defendant against the imposition of excessive punishment. To prevent the possible imposition of excessive punishment and to guide the trial court in its sentencing tasks, the legislature wisely enacted La.C. Cr.P. art. 894.1. Art. 894.1 sets forth three factors which justify a sentence of imprisonment, and eleven other factors which tend to indicate suspension of sentence or probation as appropriate. State v. Wimberly, 414 So.2d 666 (La.1982). Further, subsection (C) of that statute provides that the trial court "... shall state for the record the considerations taken into and the factual basis therefor in imposing sentence."
The trial judge in the case at bar failed to comply with art. 894.1. Prior to imposing sentence, the judge commented that he had considered the sentencing guidelines in art. 894.1 and had also studied the presentence investigative report (which was made a part of the record). However, in contravention of art. 894.1(C), he did not state for the record the factors he took into account and the factual basis therefor in imposing the sentences.
The trial court's failure to comply with art. 894.1 does not, in and of itself, render a sentence invalid. We will uphold the sentence if the record clearly illumines the sentencing choice. State v. Williams, 397 So.2d 1287 (La.1981). The record must reflect that the sentence is not excessive. A sentence results in excessive punishment "if it is grossly out of proportion to the severity of the crime, or if it is nothing more than the purposeless and needless imposition of pain and suffering." State v. Moore, 419 So.2d 963 (La.1982); State v. Simmons, 414 So.2d 705 (La.1982); State v. Bonanno, 384 So.2d 355 (La.1980). If there appears to be a substantial possibility that the sentence is excessive, we will vacate the sentence and remand the case for resentencing on an adequate record, including strict compliance with article 894.1. State v. Wimberly, 414 So.2d 666 (La.1982).
In the present case, we are of the opinion that the sentence is not excessive, for the record clearly supports the trial judge's sentencing choice. The presentence report does indicate several factors which weigh in favor of a suspended sentence or probation. Bennie Smith is a thirty-two year old married man with one minor child. He has a steady work history and no prior convictions. Nevertheless, these mitigating factors must be considered in light of the other circumstances surrounding the commission of the crimes and in particular the nature and manner in which the offenses were committed. The defendant posed as a census taker in hopes of gaining entry into the home of a young woman who did not know him. Finding his entry blocked by a locked screen door, he ripped the screen and entered into the living room. He forced the victim into the bedroom, grabbing her with such force that it bruised her nose. The victim begged her attacker not to harm her, but he persisted. Apparently, no permanent physical injuries were sustained by the victim, but her mental state has been affected. The presentence report indicates that she has moved from Louisiana and will no longer give her phone number or address to anyone.
The character of the offender Smith must also be considered. The presentence report reveals that Smith has been arrested for sex crimes which allegedly occurred on two separate occasions within two months following the present incident. At the time the sentence in this case was imposed, these charges were pending.
Given the calculated nature of the offenses, the resultant harm, and the defendant's subsequent criminal activity, we conclude *47 that there is not a substantial possibility that the defendant's sentences are excessive.

DECREE
Defendant's conviction and sentence are affirmed.
AFFIRMED.
DIXION, C.J., and LEMMON, J., concur.
DENNIS, J., concurs with reasons.
CALOGERO, J., dissents and assigns reasons.
DENNIS, Justice, concurring.
I respectfully concur.
However, I disagree with the majority opinion's treatment of arguments numbers two and three. A federal court's interpretation of a federal rule of criminal procedure is persuasive precedent but not controlling, especially in view of a previous opinion of this court squarely deciding the issue. State v. Bias, 393 So.2d 677 (La. 1981). Although I disagree with the holdings of this court which permit the exclusion of black citizens from jury service solely because of their race, I cannot say that the trial judge's finding that no racial discrimination occurred is unreasonable or a misuse of his discretion. The trial court conducted a hearing and found that the district attorney did not practice racial discrimination based on evidence showing that the prosecutor peremptorily challenged eight black prospective jurors, two white veniremen, and accepted two black persons on the jury.
NOTES
[1] Although listed, assignments number 10-12, 16-18, 30(a)(b) and 31(a)(b) were neither briefed nor argued. Therefore, they are deemed abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); State v. Matheson, 407 So.2d 1150 (La.1981).
[2] The Hammond Daily Star article describes the rape suspect as

"... a black male with an Afro hair cut that is flat on top and bushy at the sides. He is about 5 feet 9 or 10 inches tall and weights approximately 180 pounds... He reportedly was wearing a blue shirt, blue tie and dark blue pants..."
The defendant describes himself as a light-colored black male, 5 feet 8 inches and weighs approximately 155 pounds. He testified that he never had an Afro with a line parted down the middle.
[3] The dispatcher's log describes the suspect as a black male, slim build, 6 feet 2 or 3 inches, Afro parted down the middle. He was said to be wearing blue pants and shirt and a square tie clip.
[4] The offense report describes the suspect as a black male, tall, medium build, large Afro parted down the middle wearing blue pants, blue shirt with a necktie.
[5] The defendant did not ask for an in camera inspection of the alleged exculpatory information. However, the trial judge should have realized, by reading the newspaper article, that the underlying documents were exculpatory and material.
[6] Defendant argues that he was prejudiced by the late disclosure for if he had had more time, he may have been able to use the description contained in the investigative reports to find the real perpetrator of the offenses. If time was a factor, why did he not ask for a continuance or a recess? State v. Arnaud, 412 So.2d 1013 (La.1982).
[7] Miller could not recall informing a defense investigator that she had heard the victim describe her attacker as wearing blue coveralls. She could only remember the victim telling her that the assailant's clothing was blue.
[8] Defense counsel did not ask the court to conduct an inquiry such as the one we suggested in State v. Johnson, 389 So.2d 372 (La. 1980). Moreover, he does not object, in brief to this court, to the failure of the trial court to satisfy Johnson.