454 So.2d 391 (1984)
STATE of Louisiana
v.
Darryl TATE.
No. KA-1549.
Court of Appeal of Louisiana, Fourth Circuit.
July 31, 1984.
*392 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Susan Scott Hunt, Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
John M. Lawrence, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
Before GULOTTA, BARRY and CIACCIO, JJ.
BARRY, Judge.
Defendant pled guilty to second degree murder but reserved his right to appeal the denial of his motion to suppress identification. He claims the police used suggestive procedures and that the witness' limited opportunity to view the perpetrator during the crime was insufficient to constitute an "independent source of identification".
The homicide occurred about 2:20 a.m. during an armed robbery in a parking lot near S. Rampart and Calliope Streets in New Orleans. The victim, Anthony Jeffrey, was sitting in the driver's seat of his parked car and his friend Keith Dillan was in the front passenger seat. Dillan testified he'd had some drinks but his vision was not impaired. There were street lights at intervals along the street, including one light facing directly where Jeffrey and Dillan were parked. Dillan testified he saw the gunman as he approached their car, and looked directly at him for a few seconds as he leaned over the driver's seat to give him his money.
After Dillan gave the robber 40¢, the gunman demanded money from Jeffrey. Instead of giving his money, Jeffrey tried to start the car in an apparent attempt to get away. The gunman shot Jeffrey in the chest and fled. Dillan escaped and called police. Jeffrey was pronounced dead at the scene.
Defendant was linked to this homicide after he was charged with the armed robbery and attempted murder of a tourist outside the French Quarter. The gun found on defendant was tested and found to be the same weapon used to shoot Jeffrey.
Defendant moved to suppress the pretrial identifications by Dillan. The motion was denied and after the first day of trial defendant pled guilty to second degree murder, reserving his right to appeal the identification issue. State v. Crosby, 338 So.2d 584 (La.1976).
At the suppression hearing Officer Adams testified that a week after the shooting he conducted a photographic lineup and *393 showed Dillan seven mug shots, including one of the defendant taken a few days earlier. The officer did not tell Dillan the suspect's photograph was among the seven, nor did he suggest which photograph to select. According to Adams, Dillan "positively identified a photograph of Darryl Tate as being the person who armed robbed him, attempting to rob the victim [and] who subsequently shot him to death." Adams said the date 4/5/81 (two days before the photo display) was on defendant's photo but he did not call the witness' attention to it.
Dillan corroborated Adams' testimony that he positively identified the defendant's photograph without any influence. He testified he saw the dates on the mug shots but paid no attention to them.
A week after the photographic lineup Ronald Richard, an officer from the criminal investigation bureau, conducted a physical lineup. He brought the defendant and several "fill-ins" from the House of Detention for the lineup. Dillan was alone and viewed each man. No one spoke to Dillan during the lineup or gave him hints. After the lineup Dillan told Officer Richard he recognized the first man in the lineup (who was the defendant) as the robber/killer. Only the defendant was included in both the photographic showing and physical lineup.
Dillan testified he saw defendant's face by the street light for several seconds while he was handing over his money; however, Dillan did not recall what the robber was wearing. Dillan said he'd had some beers that night but his vision was not affected.
In order to suppress an identification, a defendant must prove: (1) that the identification procedure was "unduly suggestive" and (2) that there was a "very substantial likelihood of irreparable misidentification." Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); State v. Neslo, 433 So.2d 73 (La.1983); State v. Prudholm, 446 So.2d 729 (La. 1984).
A lineup is unduly suggestive if the identification procedure displays the defendant so that the witness' attention is focused on the defendant. State v. Nelso, supra; State v. Smith, 430 So.2d 31 (La. 1983). A lineup can also be suggestive if a sufficient resemblance of physical characteristics and features of persons in the lineup does not exist to reasonably test the identification. State v. Nicholas, 397 So.2d 1308 (La.1981) quoting State v. Robinson, 386 So.2d 1374 (La.1980). Strict identity of physical characteristics among the persons depicted in the photo or physical lineup is not required. All that is required is sufficient resemblance to reasonably test the identification. State v. Smith, supra; State v. Guillot, 353 So.2d 1005 (La.1977).
Our Supreme Court has held there are "no exact detailed criteria for a legitimate photographic lineup ... The fundamental rule is that each case must be considered on a careful analysis of its own facts..." State v. Tonubbee, 420 So.2d 126, 130 (La. 1982) quoting State v. Morgan, 367 So.2d 779, 783 (La.1979).
Defense counsel contends the identification procedures were suggestive because only the defendant appeared in both the physical lineup and photographic lineups. The same argument was raised in State v. Neslo, supra, where two eyewitnesses to a murder were initially shown a stack of photographs from which they each picked out several photos depicting particular facial features. The photos were used by the police artist to make a composite sketch. Later, the two witnesses were separately shown seven mug shots, and both pointed out defendant's and another man's photo as similar to the murderer. Later, the two witnesses viewed a physical lineup which included the defendant and six others. Again, both witnesses selected defendant and another man who greatly resembled the defendant. Despite the fact that only the defendant appeared in both the photographic *394 and physical lineups, the Neslo court held:
The evidence does not indicate that the identification procedures were unduly suggestive. The persons in the photographic lineup sufficiently resemble the defendant to properly test the identification. Likewise, the photograph in the record of the physical lineup shows that there was no suggestiveness in the conduct of the lineup. All of the participants were adequately matched for basic physical appearance and five of the seven participants, including Neslo, appear to be very close in height. Number six, who was initially selected but not chosen after the witnesses went on stage, is a few inches taller than Neslo.
In this case each of the police officers took particular care in selecting photographs or "fill-ins" whose facial features and general physical characteristics resembled the defendant. Each officer scrupulously avoided any actions which could have influenced or even appeared to influence the identification. We find no suggestiveness or impropriety in the identification procedure.
Defendant claims the trial court erred by refusing to permit questions as to Dillan's emotional state during the holdup. Defendant also asserts Dillan's limited opportunity to view the gunman and his inability to give police a detailed description make his identifications unreliable. Neither contention has merit due to our determination that Dillan properly identified the defendant in both lineups.
Although Dillan saw the defendant for only several seconds, he testified that he clearly saw defendant's face during the robbery. His identification at both lineups occurred within two weeks of the shooting. Thus, there was adequate independent basis for identification which outweighed any suggestiveness in the lineup procedures.
The conviction and sentence are affirmed.
AFFIRMED.