JOHNSON, Chief Justice,
dissents with reasons.
1In Miller v. Alabama, the United States Supreme Court held “that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders.” Miller v. Alabama, 567 U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). This Court has been asked to decide whether the United States Supreme Court’s decision in Miller should be ap *845 plied to juvenile offenders whose life sentences were handed down before the U.S. Supreme Court issued its June 25, 2012 decision. In other words, should Miller apply retroactively to cases on collateral review. I disagree with the majority opinion of this Court and find that Miller announced a new rule of criminal procedure that is substantive and consequently should apply retroactively, entitling Mr. Tate to relief.
The United States Supreme Court in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) announced two exceptions under which a new rule of criminal constitutional procedure applies retroactively. The Teague Court explained,
“[fjirst a new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe. Second, a new rule should be applied retroactively if it requires the observance of those procedures that ... are implicit in the concept of ordered liberty.” Id. at 307, 109 S.Ct. 1060.
|2In a subsequent decision, the United States Supreme Court provided additional guidance on rules that are encompassed under Teague’s first exception stating these rules “[arejmore accurately characterized as substantive rules not subject to the bar.” Schriro v. Summerlin, 542 U.S. 348, 352, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). Distinguishing further between procedural and substantive rules, the Court stated, “[n]ew substantive rules generally apply retroactively ... because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him.” Id. at 351-352, 124 S.Ct. 2519. Importantly, the standards set forth for determining retroactivity in Teague apply to “all cases on collateral review in our state courts.” Teague, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). I find that Miller announced a new substantive rule of criminal procedure which meets both exceptions articulated under Teague.
The first exception under Teague applies to “rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.” Penry v. Lynaugh, 492 U.S. 302, 330, 109 S.Ct. 2934, 2953, 106 L.Ed.2d 256 (1989). Miller announces a substantive rule under Teag-ue because it prohibits a particular punishment (mandatory life without parole) for a class of defendants (juveniles) due to their minority status. In my view, the state’s contention that a new rule is substantive only if it narrows, rather than expands, the range of possible sentences is unsupported. The jurisprudence is clear that rules of criminal procedure which broaden or expand the range of sentencing options have also been regarded as substantive and thus are applied retroactively. See Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (invalidating mandatory death sentences and announcing a new rule requiring that an alternative lesser sentence be made available — thereby expanding the range of sentencing options); see also Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 32964-65, 57 L.Ed.2d 973, 990 (1978) (echoing Wood-son and concluding that the Eighth and Fourteenth amendment require that the sentencing authority not be precluded from considering mitigating factors as a basis for a sentence less than death-expanding the range of sentencing options).
Like the retroactive rulings in Woodson and Lockett, Miller invalidates mandatory sentencing regimes that permit only one sentencing outcome, and authorize the range of sentencing outcomes to be ex *846 panded to include sentences less than life in prison without parole for juveniles. In requiring that an alternative sentencing option be made available to juvenile defendants convicted of homicide, Miller expands the range of permissible outcomes of the criminal proceeding.
Various state courts grappling with the issue of Miller’s retroactivity have agreed with the logic outlined above. The Mississippi Supreme Court in Jones v. Mississippi, 2009-CT-02033-SCT (Miss.2013), 2013 WL 3756564, recently held that Miller announced a new substantive rule which should be applied retroactively on collateral review. The Court reasoned:
“Although Miller did not impose a categorical ban on the punishment that the substantive law could impose, it explicitly foreclosed imposition of a mandatory sentence of life without parole on juvenile offenders.” Jones v. State, 122 So.3d 698, 702 (Miss.2013).
The Iowa Supreme Court echoed this ruling and held that Miller articulated a new substantive rule. The Court remarked:
While Graham flatly prohibits the imposition of a life without parole sentence for a nonhomicide crime committed by a juvenile in order to afford the juvenile a meaningful opportunity to gain release in the future based on maturity and rehabilitation, Miller prohibits mandatory life without parole sentences for juveniles, but would seemingly permit life without parole sentences that are not mandated by statute if the sentencing court has the power to consider the attributes of youth in the mitigation of punishment. From a broad perspective, Miller does mandate a new procedure. Yet, the procedural rule for a hearing is the result of a substantive change in the law that prohibits mandatory life -without parole sentencing. Thus, the case bars states from imposing a certain type of punishment on |¿certain people. (Internal Citations omitted). State v. Ragland, 836 N.W.2d 107, 115 (Iowa 2013).
Upon a plain reading of the Court’s holding in Miller, a mandatory sentence of life without parole for juvenile homicide offenders is unconstitutional under the Eighth Amendment’s prohibition against cruel and unusual punishment. By explicitly prohibiting the imposition of this mandatory sentencing regime, the new rule prevents “a significant risk that a [juvenile] ... faces a punishment that the law cannot impose upon him.” Summerlin, 542 U.S. at 351-52, 124 S.Ct. 2519. (emphasis added).
Moreover, “substantive rules ... include decisions that narrow the scope of a criminal statute by interpreting its terms.” Id. citing Bousley v. United States, 523 U.S. 614, 620-621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). In accordance with the new substantive rule of constitutional criminal procedure which prohibits mandatory life without parole sentences, Miller requires “[the sentencing authority] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.” Miller, 132 S.Ct. at 2469. Pre Miller, persons convicted of first or second degree murder in Louisiana received a mandatory sentence of life imprisonment without parole. Post Miller, Louisiana’s mandatory sentencing regime may not be followed in homicide cases involving juvenile defendants. Miller requires courts to establish a procedure for an individualized sentencing hearing tailored to the unique characteristics and attributes of juveniles when prosecuted as adults for homicide offenses. As the Iowa Supreme reasoned in State v. Ragland, “Miller does mandate a new procedure. Yet, the procedural rale for a hearing is the result of a substantive change in the law that prohibits mandatory *847 life without parole sentencing.” 836 N.W.2d 107, 115 (Iowa 2013). The elimination of mandatory life without parole sentencing coupled with the mandate for an individualized hearing for juvenile homicide offenders represents a substantive change in 15Louisiana criminal law. In essence, Miller modified substantive Louisiana law by also narrowing its application for juveniles.
I also find that the new rule announced in Miller meets the criteria under Teag-ue’s second narrow exception authorizing retroactive application of “a small set of watershed rules of criminal procedure implicating fundamental fairness and the accuracy of the criminal proceeding.” Sum-merlin, 542 U.S. at 351-52, 124 S.Ct at 2522. The Miller decision established a “watershed” rule of criminal procedure because it meets two requirements. First, the rule is “... necessary to prevent an impermissibly large risk” of an inaccurate criminal conviction; and it “... alter(s) our understanding of the bedrock procedural elements essential to the fairness of a proceeding.” Whorton v. Bockting, 549 U.S. 406, 418, 127 S.Ct. 1173, 1182, 167 L.Ed.2d 1 (2007). Recognizing that children should be regarded as inherently different for sentencing purposes, the Miller Court identified the shortcomings of a mandatory sentencing scheme by considering the myriad of characteristics associated with youth which may exist:
“Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features — among them, immaturity, impetuosity, and a failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him — and from which he cannot usually extricate himself — no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that they might have been charged and convicted of a lesser offense if not for incompetencies associated with youth— for example, his inability to deal with the police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys.” See, e.g. Graham, 560 U.S. at [72], 130 S.Ct. at 2032 (“[T]he features that distinguish juveniles from adults also put them at a significant disadvantage in criminal proceedings.”) (internal citations omitted) Miller, 132 S.Ct. at 2468.
The sentencing authority’s duty to consider factors attendant with youth and the disadvantages which may result is imperative. The Miller Court’s holding makes clear that these considerations are so paramount that, if not made, and a | f,sentence of life imprisonment is mandatorily imposed, the state violates the individual’s Eighth Amendment right to be free from cruel and unusual punishment. In my view, this rule speaks to the profound alteration in our understanding of fairness in the sentencing of juvenile offenders.
In further resolving the question of ret-roactivity, this Court need only look to the line of jurisprudence relied upon by the United States Supreme Court to establish its holding in Miller, as these cases have been applied retroactively on both direct and collateral review. The first line of cases involved “categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty.” See Miller, 132 S.Ct. at 2463, 183 L.Ed.2d at 417; see also Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010)(holding the Constitution prohibits the imposition of life without parole sentences on juvenile *848 offenders convicted of a non-homicide offense.); see also In re Sparks, 657 F.3d 258, 261-62 (5th Cir.2011) (indicating Graham was made retroactive on collateral review by the Supreme Court as a matter of logical necessity under Tyler v. Cain, 533 U.S. 656, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001)); see also Roper v. Simmons, 543 U.S. 551, 578, 125 S.Ct. 1183, 1200, 161 L.Ed.2d 1, 29 (2005)(holding the Eighth Amendment and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed.)
The second line of precedent addresses prohibitions against mandatory capital punishment by “requiring that sentencing authorities consider the characteristics of a defendant and the details of his offense before sentencing him to death.” Miller, 568 U.S. at-132 S.Ct. at 2463-64, 183 L.Ed.2d at 418. In Jackson v. Hobbs, 567 U.S.-, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), Miller1 s companion case, the Supreme Court reversed the Arkansas courts, which had denied state habeas relief to defendant Jackson, whose conviction and sentence |7were final when he petitioned the Court for relief under Miller. Applying the holding in Miller retroactively, the Supreme Court remanded the case for further proceedings.
I find that the Court’s ruling in Jackson fully supports that the Court’s ban on mandatory life without parole sentences is fully retroactive to all defendants on collateral review. As the Court reasoned in Teague, “once a new rule is applied to the defendant in the case announcing the rule, even handed justice requires that it be applied retroactively to all who are similarly situated.” Teague, 489 U.S. at 300, 109 S.Ct. 1060. The Supreme Court would have had no reason to make such a ruling if it did not intend Miller to apply retroactively to cases on collateral review. Furthermore, the dissent by Chief Justice John Roberts in Miller begs the question that this dissent seeks to highlight. Surely Chief Justice John Roberts understood the retroactive ramifications of Miller as he concluded, the majority’s opinion, “appears to be nothing other than an invitation to overturn life without parole sentences imposed by juries and trial judges.” Miller, 132 S.Ct. at 2481. (Roberts, C.J. dissenting).
In the case sub judice, Tate plead guilty to the offenses of second degree murder, attempted first degree murder, and armed robbery. Tate was 17 years old at the time he committed the offenses. Tate was sentenced to serve concurrent terms of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence; 50 years imprisonment at hard labor; and 50 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Tate’s conviction was affirmed on appeal on July 31, 1984. State v. Darryl Tate 454 So.2d 391 (La.App. 4 Cir.1984). Mr. Tate should be accorded the same relief as this Court granted in State v. Simmons, 11-1810 (La.10/12/12), 99 So.3d 28; and State ex rel. Landry v. State, 11-0796 (La.1/18/13), 106 So.3d 8106, wherein this Court remanded to the district court for resentenc-ing in accordance with Miller.
Because I find that Miller announced a new substantive rule of constitutional criminal procedure which should be applied retroactively on collateral review, I will address the implications of 2013 La. Act 239 (Act 239) and La.Code Crim. Proc. Art 878.1(Art. 878.1), and La.Rev.Stat. 15:574.4(E)(1) only very briefly. The legislature enacted statutory law and corresponding rules of criminal procedure in response to Miller’s, holding, recognizing that children are inherently different than adults, and must be sentenced with those *849 differences in mind to pass constitutional muster under the Eighth Amendment. Thus, full compliance with Miller mandates that Louisiana’s new laws addressing sentencing apply to that category of defendants who were less than 18 years of age at the time of commission of the homicide offense. Fundamental fairness in the administration of justice requires that these new laws apply to Darryl Tate, and all defendants who are similarly situated in Louisiana. Accordingly, I would remand the case to the district court for resentenc-ing in line with Miller.