STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-841

STATE OF LOUISIANA

VERSUS

LEROY SEMIEN

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 02-K-0612-B
HONORABLE ELLIS J. DAIGLE, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and
Billy Howard Ezell, Judges.

**Thibodeaux, Chief Judge, dissents and assigns written reasons.**

AFFIRMED.

G. Paul Marx
Louisiana Appellate Project
P. O. Box 82389
Lafayette, LA 70598-2389
Telephone:  (337) 237-2537
Counsel for Defendant/Appellant:
Leroy Semien

Earl B. Taylor
District Attorney
Twenty-Seventh Judicial District Court
Alisa Ardoin Gothreaux
Assistant District Attorney
P. O. Drawer 1968
Opelousas, LA 70571
Telephone:  (337) 948-0551
Counsel for Plaintiff/Appellee:
State of Louisiana

**Leroy Semien**
**C.P.C.F.**
**26356 Highway 15**
**Ferriday, LA 71334**

**SAUNDERS, Judge.**

On March 24, 2004, the Defendant, Leroy Semien, was charged by bill of information with distribution of cocaine, a violation of La.R.S. 40:967. The Defendant filed a written plea of not guilty on April 8, 2004.

Jury selection in the matter began on October 11, 2005, and the jury returned a verdict of guilty on October 13, 2005. On January 13, 2006, the Defendant was sentenced to twelve years at hard labor, with the first two years to be served without benefit of probation, parole, or suspension of sentence. An oral Motion for Reconsideration was made and set for hearing. A written Motion to Reconsider Sentence was subsequently filed on February 6, 2006. The motion was denied on May 12, 2006.

An oral Motion for Appeal was made on May 12, 2006. A written Notice of Appeal was subsequently filed on May 17, 2006. The Defendant is now before this court asserting three assignments of error through counsel and additionally asserts two *pro se* assignments of error. In his appeal, the Defendant asserts that the evidence does not support his conviction, that the trial court erred in preventing him from discussing the confidential informant's criminal record, that his sentence is excessive, and that the trial court erred in not allowing an evidentiary hearing on his claims of jury misconduct. We find these assignments of error lack merit.

**FACTS:**

The Defendant was convicted of distribution of cocaine as the result of a controlled buy in Opelousas.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed on the face of the record for errors patent. After reviewing the record, we find no errors patent.

**ASSIGNMENT OF ERROR NO. 1:**

In his first assignment of error, the Defendant contends the State did not prove the essential elements of the crime beyond a reasonable doubt because the identity of the Defendant was confused with other cases, the officer making the drug buy did not have a report, there was no photo lineup, and although there was testimony that two rocks were bought, only one rock weighing .13 grams was introduced into evidence.

Although the Defendant sets forth several issues regarding the evidence against him, he limits his actual argument, as well as the law set forth in his memo, to the issue of whether the evidence was sufficient to prove his identity as the person who sold drugs to Travis Ellis. Therefore, we will limit our review of the evidence to the issue of identity.

> As a general matter, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. *State v. Smith*, 430 So.2d 31, 45 (La.1983); *State v. Brady*, 414 So.2d 364, 365 (La.1982); *State v. Long*, 408 So.2d 1221, 1227 (La.1982). However, positive identification by only one witness is sufficient to support a conviction. *See State v. Mussall*, 523 So.2d 1305, 1311 (La.1988) (generally, one witness's positive identification is sufficient to support the conviction); *State v. Ford*, 28,724 (La.App.2d Cir.10/30/96), 682 So.2d 847, 849-50, *writ denied*, 99-0210 (La.5/14/99), 745 So.2d 12.

*State v. Neal*, 00-674, p. 11 (La. 6/29/01), 796 So.2d 649, 658, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323 (2002).

Detective Mark Guidry testified that on January 25, 2002, he was in charge of a series of controlled buys that were planned for the day. The controlled buys were completed by Travis Ellis, who was employed by the Port Barre Police Department, and a confidential informant (C.I.). For security purposes, Ellis and the C.I. were equipped with an audio transmission device through which a monitoring team could

2

hear what transpired during the buy, which Detective Guidry testified was recorded for evidentiary purposes. The audio tape of the buy was played to the jury at the State's request; however, it was not introduced into evidence.

Ellis testified that on the date of the offense, he and the C.I. were riding around Opelousas when they passed a residence on Hayward Street. Ellis got out of the car at the residence and attempted to buy narcotics from various people that were in standing in yards; however, no one wanted to deal with him; so, he returned to the car, and he and the C.I. continued to drive around. Ellis testified that he and the C.I. subsequently came into contact with the seller, who he described as wearing blue jeans, a white shirt, and a black knit hat. The seller put his bike in the trunk of the car and got into the backseat to discuss a possible drug transaction and to get a ride back to a residence on Hayward Street. The three men returned to the same residence at which Ellis and the C.I. had previously stopped. Once back at the residence, the seller went inside a trailer and came back out with two rocks that he subsequently sold to Ellis. Ellis testified that during the buy, the C.I. called the seller "Leroy." He further testified that he initially called the seller "Leroy" and the seller responded, "No, my name's not Leroy, it's Jeremiah." After the sale had been completed, Ellis met with the monitoring team and turned over the suspected drugs.[1] Ellis testified that after the drugs were turned over to the monitoring team, he drove past the residence where the buy occurred, but the seller was no longer present.[2]

_____

[1]Ellis testified that he met the monitoring team immediately, but then stated it could have been fifteen minutes later. He later testified that the monitoring team came by the buy location a few minutes later and met him and the C.I. at a secured location fifteen minutes after the buy.

[2]Ellis testified that the buy at issue was one of three conducted on the same day. Detective Guidry testified that the buy at issue was the second or third of the day.

(continued...)

No photograph lineup was conducted after the buy; however, Ellis made an in-court identification of the Defendant as the seller at the trial that began on October 13, 2005. He later testified that he was positive that the Defendant was the man from whom he bought the drugs. He stated that although he had not met the Defendant prior to the buy at issue or subsequent thereto, he remembered the Defendant's face. Ellis stated that the transaction took place on January 25, 2002 between 6:00 and 7:00 p.m., when it was still daylight and that he looked at the Defendant "[f]or a minute," and also watched him walk from the residence back to the car, where the buy took place.

Detective Guidry testified that he was familiar with the Defendant prior to the date of the buy and also made an in-court identification of the Defendant. He testified that during the buy, he could hear the names "Leroy" and "Jeremiah" but did not hear the name "Leroy Semien". He did testify, however, that the C.I. gave the name of the seller as "Leroy".

Detective Guidry testified that after the buy was completed, Ellis and the C.I. gave Mouton Street or Hayward Street as the area where the buy took place.[3] However, he stated that no specific address was given. Once Ellis and the C.I. left the area, Detective Guidry and the monitoring team drove to the area in an attempt to locate and identify the seller. The team arrived on the scene approximately one to three minutes after the buy. Both Ellis and the C.I. had described the seller as a black male with a black hat, white shirt, and blue jeans.

---

[2](...continued)
He later testified a buy was made after the transaction at issue.

[3]The two streets intersect.

Detective Guidry stated that he saw the Defendant standing in the yard next to a trailer located at 1322 Hayward Street and, as Detective Guidry stated, "he fit the description that was given, and I knew him personally and knew his name was Leroy Semien at that time."[4]

However, because the C.I. could not give the last name of the seller, Detective Guidry testified that he drove Ellis back through the area two or three minutes after the buy, and Ellis identified the residence Detective Guidry had seen the Defendant standing in front of as the residence where the buy took place. However, the Defendant was no longer there.

Detective Guidry was questioned about the identification of the Defendant as follows:

> Q.     Okay.  Did you look for any other black males hanging out dressed like that?
>
> A.     We rode through the area and didn't see anybody else that I knew -- that I knew had the name of Leroy fit that description at that time.
>
> Q.     You could have missed someone, couldn't you?
>
> A.     Possibly.
>
> Q.     Do you agree with that?
>
> A.     Yes, sir.
>
> Q.     You've seen other people named Leroy dressed like that, I assume, huh?
>
> A.     I'm pretty sure, yes.  A white T-shirt and blue jeans is pretty common.  That's actually a technique used by a lot of dealers to circumvent being identified.  They all wear the same, pretty much, clothing description.
>
> Q.     Right.  And some non-dealers wear that, too, - -

---

[4]Detective Guidry testified the address 1322 Hayward was posted on the mailbox or other pole in front of the residence.

A.    Yes, too.

Detective Guidry testified that a photographic lineup was not available in this case, since the police department had no photograph of the Defendant. Although a photographic lineup was mentioned in Detective Guidry's investigation report, as well as in the affidavit of probable cause, Detective Guidry admitted there was a mistake in the affidavit.

Lieutenant Donald Thompson testified that he worked on the monitoring team on the date of the offense. He testified that ten to fifteen minutes before the buy, he passed through "that area" and saw the Defendant. During the buy, Lieutenant Thompson heard Ellis relay a description of the person from whom he had purchased drugs. According to Lieutenant Thompson, Ellis' description indicated that the subject was wearing a white shirt, a dark-colored jacket, blue jeans, and a knit cap with a bib. Lieutenant Thompson testified regarding the Defendant as follows: "I knew what he was wearing and, of course, I knew where he lived, you know, so, you know, I knew that's who they had purchased narcotics from." He further testified that the name "Leroy Semien" was mentioned on the tape played to the jury. He was questioned about the tape as follows:

> Q.    Detective Thompson, you just -- you heard -- you reviewed the tape and you just heard that played for the jury, and in that tape, were you able to discern or understand you, yourself, saying, "Yes, I saw him a little bit earlier" or "I just saw that guy"?
>
> A.    Yes, ma'am.

Lieutenant Thompson then made an in-court identification of the Defendant and testified that the Defendant was the person he saw in the area before the buy wearing the same clothing as that described by Ellis. He also testified that he was

6

sure the Defendant resided at 1322 Hayward Street on January 25, 2002; however, he later admitted he was not certain that was the exact address.

We note that Lieutenant Thompson did not write a report in this matter, nor did Detective Guidry's report contain the information regarding Lieutenant Thompson's sighting of the Defendant prior to the buy.

Detective Guidry testified that the Defendant was arrested on February 13, 2002 at 1322 Hayward Street. However, during booking, the Defendant indicated he lived on Lastrapes Street, which Detective Guidry testified was the home of the Defendant's mother. Through surveillance, Detective Guidry determined that the Defendant lived with a female, who Detective Guidry thought was April Ducote. Subsequent surveillance revealed the Defendant at, or around, a trailer on the thirteen hundredth block of Hayward Street. Detective Guidry testified that, at one time, all the trailers in the trailer park had the same address with a designated letter, which changed after 9-1-1 was implemented. A search revealed that the Defendant had contacts with 1328 Hayward Street, rather than 1322 Hayward Street. Willie Mae Washington, a clerk with the water department of the City of Opelousas, testified that there was no water service at 1322 Hayward Street on February 13, 2002. Washington further testified that in 2005, April Ducote resided at 1328 Hayward Street, Lot B, which had been 1320 Hayward Street prior to 9-1-1 changes, and that services for Ducote at that address had commenced on August 26, 2002, and ceased on March 15, 2004. Washington was not asked to run the Defendant's name through the system, and she had no knowledge about whether the Defendant lived at 1328 Hayward Street prior to August 26, 2002.

7

Sergeant Roylis Gallow arrested the Defendant at a trailer within the thirteen hundredth block of Hayward Street. In his opinion, at the time of the arrest, the Defendant had lived in the trailer between six months and a year.

It is well established that the standard of review to uphold a conviction is whether any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of the crime beyond a reasonable doubt. La.Code.Crim.P. art. 821, *State v. Odom*, 03-1772 at 5-6, 878 So.2d 582.

There is evidence in the record to find that the jury was reasonable in finding that the Defendant was positively identified. Travis Ellis, an employee of the Port Barre Police Department, made an in-court identification of the Defendant as the seller. We find that it is reasonable for the jury to have found that identification credible enough to remove any reasonable doubt as to the identification of the perpetrator of the sale. Accordingly, we find there is no merit to the Defendant's first assignment of error.

**ASSIGNMENT OF ERROR NO. 2:**

In his second assignment of error, the Defendant contends the trial court erred when it prevented the defense from introducing evidence that the C.I. had eight prior convictions, yet allowed the State to argue that the same person was "reliable" in making cases.

During the cross-examination of Detective Guidry, defense counsel asked Detective Guidry if he would agree that the C.I. had been convicted at least eight times. The State objected, arguing the information was irrelevant. The trial court sustained the objection, and the jury was instructed to disregard the information.

8

Louisiana Code of Evidence Article 609.1 provides for attacking credibility by evidence of conviction, in pertinent part, as follows:

**A. General criminal rule.** In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.

**B. Convictions**. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.

**C. Details of convictions.** Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:

(1) When the witness has denied the conviction or denied recollection thereof;

(2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or

(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.

Louisiana Code of Evidence Article 806 establishes the standard for attacking the credibility of a hearsay declarant as follows:

When a hearsay statement, or a statement defined in Article 801(D)(2)(c) or (D)(3), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, offered to attack the declarant's credibility, is not subject to any requirement that he may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine him on the statement as a witness identified with an adverse party.

9

The C.I. did not testify at trial. Therefore, we find article 609.1 inapplicable to the case at bar. Additionally, no statements made by the C.I. were admitted at trial. Therefore, we also find article 806 inapplicable to the case at bar.

The Defendant further argues that his right to impeach the credibility of the State's witness was impinged, and his right to present a defense was prejudiced. We do not find that the Defendant's right to present a defense was prejudiced, as he called witnesses in this matter and cross-examined those called by the State. Additionally, his right to impeach the credibility of Detective Guidry was not impinged, as he was able to cross-examine him regarding his role in the controlled buy. Furthermore, we do not find the reliability of the C.I. to be an issue in this case, as the C.I. did not testify at trial, nor did he provide police with information used in the prosecution of the Defendant. Accordingly, this assignment of error lacks merit.

**ASSIGNMENT OF ERROR NO. 3 AND *PRO SE* ASSIGNMENT OF ERROR NO. 2:**

In his third assignment of error, the Defendant contends the twelve-year sentence imposed upon him as a first-time offender convicted of distribution of approximately 1/10th of a gram of crack is excessive.

The Defendant argues that the trial court's consideration of his prior arrest for assault, which had no disposition, violates the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000). The Defendant asserts the sentence is unconstitutional because it is not based on facts tested by a jury in accordance with *Apprendi*. Additionally, in his *pro se* brief, the Defendant cites *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004), for the same proposition. The Defendant also argues that the record does not support the sentence in this case, as he was a first offender and received a sentence near the maximum of

10

fifteen years. We note appellate counsel's assertion regarding the maximum sentence is incorrect, as the Defendant could have been sentenced to a maximum of thirty years. La.R.S. 40:967. Additionally, the Defendant contends that the trial court did not consider the sentencing guidelines set out in La.Code Crim.P. art. 894.1.

Counsel for Defendant filed a Motion to Reconsider Sentence stating the following: "Defendant contends the sentence was excessively harsh." Additionally, at the hearing on the motion, defense counsel merely argued that the Defendant's sentence was excessive. "Failure to . . . include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review." La.Code Crim.P. art. 881.1(E). Defense counsel clearly failed to argue that the trial court did not comply with La.Code Crim.P. art. 894.1, or that consideration of the Defendant's prior arrest violated the rulings set out in *Apprendi* and *Blakely*. Accordingly, we find that these issues are not properly before this court and should not be reviewed. We will, however, determine whether the Defendant's sentence is excessive.

> The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. " '[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.' " *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784

11

(La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

The fifth circuit, in [*State v.*] *Lisotta*, [98-646 (La.App. 5 Cir. 12/16/98),] 726 So.2d [57] at 58, stated that the reviewing court should consider three factors in reviewing the trial court's sentencing discretion:

1. The nature of the crime,

2. The nature and background of the offender, and

3. The sentence imposed for similar crimes by the same court and other courts.

*State v. Whatley*, 03-1275, pp. 5-6 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, 958-59 first two alterations in original.

The sentencing range for distribution of cocaine is two to thirty years at hard labor, with the first two years of the sentence to be served without benefit of probation, parole, or suspension of sentence. La.R.S. 40:967(B)(4)(b). The Defendant in the instant case was sentenced to twelve years at hard labor by the trial court.

At the sentencing hearing, the trial court made the following remarks:

Considering the input from the defendant, the Pre-Sentence Investigation, and the guidelines set forth by Louisiana Code of Criminal Procedure Article 894.1, and other applicable sentencing statutes . . . the Court notes the following factors pertinent to this sentence. The defendant is a first time felony offender . . . . Also, the defendant was arrested for aggravated assault, as indicated by his Counsel, on July 7, 2005, where it was alleged that the defendant possessed a weapon, a gun, and he pointed it at other individuals. Accordingly, there is an undue risk that during a period of a suspended sentence or probation, the defendant would commit another crime. The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution. A lesser sentence would deprecate the seriousness of the defendant's crime. There are no mitigating circumstances and no remorse. In fact, the defendant, even at this time, indicates that certain things were or were not done and still professes, I guess, his innocence in respect to what he has indicated to the Court.

Although the Defendant is a first felony offender, we do not find the sentence imposed upon him by the trial court to be excessive. The twelve-year sentence imposed upon him is well within the thirty-year statutory limit set forth in La.R.S. 40:967(B)(4)(b). As previously discussed, the trial court is granted wide discretion in imposing a sentence, and absent an abuse of that discretion, we will not find the sentence imposed to be excessive when the sentence imposed falls within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. The only consideration before us on review is whether the trial court abused its wide discretion, not whether another sentence would be more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996). After reviewing the record and considering the evidence, we do not find that the trial court abused its discretion in sentencing the Defendant to twelve years at hard labor for distribution of cocaine, as it is less than half of the allowable maximum sentence set forth in La.R.S. 40:967(B)(4)(b). Accordingly, we find this assignment lacks merit.

**ASSIGNMENT OF ERROR NO. 4:**

In his forth assignment of error, the Defendant contends the record is defective and impairs his appeal of right because the minutes reflect that the trial court denied a *Batson* challenge during jury selection; however, the district court did not include the transcript of jury selection in the record, and therefore, appellate counsel cannot review, brief, or argue that issue.

We find this issue to be moot, as the transcript of jury selection was submitted to this court in a supplement record and provided to appellate counsel for review.

***PRO SE* ASSIGNMENT OF ERROR NO. 1:**

13

In his first *pro se* assignment of error, the Defendant contends the trial court violated his right to a fair trial by an impartial jury. Defendant asserts that the trial court was informed that the jury was influenced by an outside influence/communication that occurred between a witness and a jury member before the verdict was decided. However, the court denied an evidentiary hearing and a Motion for a New Trial, claiming that a jury member is protected and prevented from testifying under La.Code Evid. art. 606(B), directly in violation of the same and the Defendant's rights under U.S. Const. Amends. V, VI, and XIV. On October 14, 2005, defense counsel informed the trial court that juror Marie Green informed him that Roylis Gallow spoke to her about the case . The trial court then requested that defense counsel file a formal motion.

On October 14, 2005, the Defendant filed a Motion to Set Aside Verdict Based Upon Jury Misconduct/Tampering. Therein, the Defendant alleged that juror Marie Green advised defense counsel that she and Roylis Gallow discussed the case during a trial recess. During their conversation, Green alleged, Gallow informed her that the Defendant had previously been arrested and was a known drug dealer. Additionally, Gallow allegedly also told Green that the Defendant had "gotten off" in the past, and thought he would "get off" again.

A Supplemental Motion to Set Aside Jury Verdict Based Upon Jury Misconduct was filed on October 31, 2005. Therein, the Defendant alleged that Green had recanted her story, but that Green admitted that another juror, Provost, committed jury misconduct by informing other jurors that she had spoken to the Defendant and that his voice was the same as the voice on the audio tape played to the jury.

14

At a hearing held on November 10, 2005, defense counsel informed the trial court that he had abandoned his original motion.

In his brief to this court, the Defendant addresses Gallow's conversation with Green, but does not include the actions of Provost in his assigned error. As defense counsel abandoned his original motion regarding Green's contact with Gallow, there was no ruling by the trial court as to that matter, and therefore, this issue is not properly before this court. Accordingly, we find this assignment of error lacks merit.

## CONCLUSION:

The Defendant's conviction and sentence are affirmed.

**AFFIRMED.**

STATE OF LOUISIANA

VERSUS

LEROY SEMIEN


**THIBODEAUX, Chief Judge, dissenting.**

The key question on the issue of identity in a criminal case is whether the State has negated "any reasonable probability of misidentification." *State v. Smith*, 430 So.2d 31, 45 (La.1983). While the majority recognizes this well-established legal principle, it fails to properly apply it.

The evidence, at best, tends to prove that Lieutenant Thompson saw the Defendant standing in front of a residence on Hayward Street prior to the buy. Ellis and the C.I. picked up the seller at a location not set forth in the record and returned to a residence on Hayward Street, where Ellis was sold drugs. After the buy, Detective Guidry saw the Defendant standing in a yard on Hayward Street. Ellis gave a description of the seller's clothing, which matched the clothing Lieutenant Thompson and Detective Guidry said the Defendant was wearing. However, Detective Guidry stated that the clothing described by Ellis was commonly worn and was worn by drug dealers in order to prevent identification. During the buy, the C.I. stated the seller's name was "Leroy;" however, the seller said his name was "Jeremiah." An acquaintance of the Defendant resided at an address on Hayward Street, but not the address at which Detective Guidry said he saw the Defendant

standing.  Ellis never identified the Defendant as the seller until trial, *more than three and one-half years later*, and only after he had seen the Defendant "[f]or only a minute" in the month of January.[1]  Ellis gave a description of the seller's clothing after the buy, but never described the physical characteristics of the seller.  Ellis's recollection of the events surrounding the controlled buy, as described in footnotes 1 and 2 of the majority opinion, strains credulity.

 The evidence does not support the finding that the Defendant was the person who sold drugs to Ellis.  The State did not negate "any reasonable probability of misidentification."  *State v. Smith*, 430 So.2d 31, 45.  I would, therefore, reverse the Defendant's conviction, vacate his sentence, and order an entry of acquittal.

 For the foregoing reasons, I dissent.

---

[1]One does not need expert testimony to know that it is dark, not daylight, between 6:00 p.m.-7:00 p.m. in January.