## NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-0552

STATE OF LOUISIANA

VERSUS

RUSSELL J. AUGUILLARD, JR.

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF LAFAYETTE, NO. 113,228
HONORABLE KRISTIAN EARLES, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

JIMMIE C. PETERS
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Marc T. Amy, and James T. Genovese, Judges.

AFFIRMED AND REMANDED WITH INSTRUCTIONS.

Michael Harson
District Attorney, 15th JDC
Keith A. Stutes
Assistant District Attorney, 15th JDC
Post Office Box 3306
Lafayette, LA 70502
(337) 232-5170
COUNSEL FOR APPELLEE:
    State of Louisiana

**Annette Roach**
**Louisiana Appellate Project**
**Post Office Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Russell J. Auguillard, Jr.**

PETERS, J.

The State of Louisiana (state) charged the defendant, Russell J. Auguillard, Jr., by grand jury indictment with aggravated rape, a violation of La.R.S. 14:42; attempted second degree murder, a violation of La.R.S. 14:27 and 14: 30.1; and three counts of false imprisonment while armed with a dangerous weapon, all violations of La.R.S. 14:46.1. At the beginning of the trial, the state severed two of the counts of false imprisonment, and the matter proceeded to trial on the remaining three counts. A jury found the defendant guilty of the responsive verdicts of forcible rape, a violation of La.R.S. 14:42.1, and of attempted manslaughter, a violation of La.R.S. 14:27 and 14:31. The jury found the defendant not guilty of the single false imprisonment charge. Thereafter, the trial court sentenced the defendant to serve consecutive sentences on the two convictions—forty years at hard labor, without benefit of probation, parole, or suspension of sentence on the forcible rape conviction, and twenty years at hard labor on the attempted manslaughter conviction. The defendant has appealed his conviction and sentences, asserting six assignments of error. For the following reasons, we affirm the defendant's convictions and sentences, but remand the matter to the trial court with instructions to comply with La.Code Crim.P. art. 930.8(C).

### DISCUSSION OF THE RECORD

The criminal charges against the defendant arise from an August 10, 2006 argument between the defendant and his fiancée, J.R.[1] The evidence at trial presented diametrically opposed versions of what occurred on that day, but the jury accepted J.R.'s version that the argument escalated into a physical altercation wherein the defendant raped and physically assaulted her.

---

[1]The alleged victim will be identified by her initials as required by La.R.S. 46:1844(W).

The record establishes that the defendant met J.R. in Tampa, Florida, during the summer of 2006; that the defendant and J.R. began living together in Tampa;[2] and that soon thereafter, J.R. accepted the defendant's proposal of marriage.[3] On July 25, 2006, the couple and the four children moved to Louisiana, intending to set up housekeeping in a Breaux Bridge, Louisiana home inherited by the defendant. However, when they arrived, they found that the home was uninhabitable and they were forced to check into a Lafayette, Louisiana motel. Both J.R. and the defendant began looking for employment, but neither was able to find full-time employment. They survived on what little money they could earn with part-time employment and public assistance.

Both J.R. and the defendant testified at trial, and both agree that they had an argument on August 10, 2006. However, all aspects of the argument are in dispute. J.R. testified that the argument began at approximately 9:30 on the morning of August 10, at the Lafayette motel where they were staying, whereas the defendant testified that the argument began that evening as they traveled to his mother's house. J.R. testified that the argument began over the issue of finances, whereas the defendant testified that the issue was his alleged unfaithfulness, not money. J.R. testified that the argument quickly escalated into a physical attack on her by the defendant, whereas the defendant testified that nothing physical occurred and that the argument ended quickly with him informing J.R. that their relationship was over and she needed to find another place to stay. J.R. testified that after the defendant physically attacked her, he made her go into the bathroom with him and participate in an act of sexual

---

[2]J.R.'s seven-year-old son, five-year-old daughter, ten-month-old son, and twelve-year-old brother resided with J.R. and the defendant.

[3]J.R. and the defendant never actually married.

2

intercourse, whereas the defendant remained adamant that he was not present in the motel that morning. J.R. testified that the two older children were in school at the time of the argument and the two younger children were present at all times, whereas the defendant testified that the five-year-old child was in school on August 10.

### Assignment of Error Number One

In his first assignment of error, the defendant asserts that the evidence was insufficient to establish the elements of either the original charges or the two responsive verdicts. When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). It is also well settled that it is the fact finder's role to weigh witness credibility, and the reviewing court should not second-guess those credibility determinations beyond the sufficiency evaluations under the *Jackson* standard of review. *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983).

As previously stated, the defendant was initially charged with attempted second degree murder and aggravated rape. However, the jury did not convict the defendant of the offenses charged. Instead, the jury returned the responsive verdicts of guilty of attempted manslaughter and guilty of forcible rape. La.Code Crim.P. art. 814(A)(4) and (A)(8). "[C]ompromise verdicts are permissible, so long as the evidence supports either the verdict given or the original charge." *State v. Charles*, 00-1611, p. 5 (La.App. 3 Cir. 5/9/01), 787 So.2d 516, 519, *writ denied*, 01-1554 (La. 4/19/02), 813 So.2d 420 (citing *State v. ex rel. Elaire v. Blackburn*, 424 So.2d 246

3

(La.1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432 (1983)). Thus, the state's burden was to prove beyond a reasonable doubt that the defendant committed either the offenses charged or the responsive verdicts returned by the jury.

Louisiana Revised Statutes 14:30.1(A)(1) defines the offense of second degree murder, as it applies to this prosecution as "the killing of a human being . . . [w]hen the offender has a specific intent to kill or to inflict great bodily harm." Furthermore, "[a]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended." La.R.S. 14:27(A). As it applies in the matter now before us, La.R.S. 14:31(A)(1) defines the offense of manslaughter as:

> A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]

To convict of attempted manslaughter, the state had to prove that the defendant had the specific intent to kill. La.R.S. 14:27; *State v. Porter*, 626 So.2d 476 (La.App. 3 Cir.1993).

> Whether an accused possessed the requisite specific intent is an ultimate legal conclusion that must be resolved by the finder of fact. *State v. Govan*, 593 So.2d 833 (La.App. 4 Cir.), *writ denied*, 600 So.2d 654 (La.1992); *State v. Rayford*, 476 So.2d 961 (La.App. 1 Cir.1985). Specific criminal intent is that "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). Since specific criminal intent is a state of mind, it need not be proven as a fact, but it may be inferred from the circumstances present in the case and the actions of the defendant. *State v. Hongo*, 625 So.2d 610 (La.App. 3 Cir.1993), *writ denied*, 93-2774 (La. 1/13/94), 631 So.2d

4

1163.

*State v. Williams*, 95-879, p. 8 (La.App. 3 Cir. 1/31/96), 670 So.2d 414, 418-19

As it applies to the matter now before us, La.R.S. 14:42(A)(2) defines aggravated rape as "a rape committed upon a person . . . where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed . . . [w]hen the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution." "Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because . . . the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape." La.R.S. 14:42.1(A)(1).

The defendant challenges the sufficiency of the evidence by contesting J.R.'s credibility. He contends that the inconsistencies in the evidence preclude any rational trier of fact from concluding that the state carried its burden of proof. Specifically, he argues that the evidence leaves a reasonable doubt as to whether he was home during the time J.R. claims to have been attacked and raped, much less whether he had the specific intent to kill her.

J.R. testified that the criminal offenses occurred on the morning of August 10, soon after she and the defendant returned to the motel after delivering the two older children to school. According to J.R., the argument quickly escalated into a physical attack when the defendant slapped her in the face and grabbed her in a choke hold. Initially, when she asked him to stop, he released her and attempted to calm the two younger children who were both crying at this time. She then attempted to leave the

5

room, but the defendant grabbed her by the shoulder, and she tripped and fell to the floor.

According to J.R., the defendant then took a position on top of her as she lay on the floor, grabbed her daughter by her shirt and pulled her back into the room.[4] J.R.'s arm remained between the door and the door frame, and the defendant began opening and shutting the door, hitting her arm repeatedly with the door. All the time, she was screaming for help.

J.R. testified that the defendant finally pulled her away from the door, but did not release her. Instead, he sat on her back and twisted her neck back and forth with one hand on her chin and the other on the back of her head. Her resistance caused the defendant to abandon twisting her neck, and he then flipped her over onto her back while continuing to hold her down against the floor. J.R. testified that the defendant then wrapped both hands around her neck, with one hand holding her mouth and nose. She could not breath in this position and almost lost consciousness. As J.R. continued to struggle,[5] the defendant moved his hand from her face, placed it against her neck, and continued to choke her.

J.R. stated that she genuinely believed that the defendant was trying to kill her, and, because her struggles were getting her nowhere, she changed her tactics to save her life. She stopped struggling and tried to convince the defendant that everything was going to be all right, that she loved him, that she would not tell anyone what he had done, and that she would stay with him. According to J.R., the defendant continued to choke her a little longer, but finally released her neck. When he released

---

[4]J.R. had testified that she and her daughter had reached the door when the defendant grabbed her. She told her daughter to run for help, but the daughter froze.

[5]J.R. testified that she even tried to grab the defendant's "private parts," but was unsuccessful.

6

her, J.R. immediately picked up her crying baby, but the defendant ordered that she put the baby down because he believed that she was only holding the baby to protect herself.

J.R. testified that as things began to subside, she asked the defendant why he had tried to kill her if he truly loved her. The defendant responded that he would lose nothing by killing her. Based on this response, J.R. remained convinced that the defendant was about to kill her, and she remained on the floor with the baby and her daughter, hugging and comforting them. Five minutes later, according to J.R., the defendant ordered her into the bathroom to have sex.

J.R. initially refused, telling the defendant that she could not become aroused after what had happened and that she was still afraid. Despite the defendant's assurances that he was not going to hurt her anymore, J.R. remained frightened. Still, she went into the bathroom and submitted to sexual intercourse out of fear for her own safety and the safety of her children.[6] She testified that she did not resist because she felt she had already been overpowered by the defendant's prior actions.

According to J.R., after completing the sexual act, the defendant instructed her to shower and get dressed so that he and she could retrieve the other two children from school. Before leaving the motel, the defendant armed himself with a small kitchen knife and, when they picked the children up from school, he held the knife to her waist. After picking up the other children, the entire family went to a grocery store where the defendant instructed everyone to exit the vehicle. According to J.R., as she attempted to exit the vehicle, she was overcome with nausea and proceeded to vomit. The defendant allowed her to remain in the vehicle, but took the car keys and

_____

[6]According to J.R., when she asked the defendant not to go forward with the act of sexual intercourse, the defendant told her that she was his woman and that she must comply.

the children with him. After the defendant and the children exited the grocery store, he drove them to his mother's home where they had dinner. After eating, they all returned to the motel.

With regard to the occurrences of the morning of August 10, 2008, the defendant's testimony is very short. Simply stated, nothing happened, or could have happened that morning because, after taking the children to school, he worked eleven hours at All Star Electric that day. His argument on appeal is based on the believability of J.R.'s testimony.

Concerning his employment on August 10, the defendant supported this assertion with the testimony of Kathy Choate, the assistant manager of Labor Finders, a Lafayette, Louisiana company which provides daily labor to companies in need of immediate assistance. Ms. Choate explained that when her company provides a worker to a business, the worker is provided with a work ticket to be filled out by the employer. The worker then returns the work ticket to Labor Finders, which then pays the worker and bills the employer for the services together with Labor Finders' charges. Ms. Choate produced work tickets reflecting that the defendant worked 6.15 hours with Wingfoot Commercial Tire, LLC on August 3, 2006; eight hours with Mann's Construction on August 4, 2006; nine hours with All Star Electric on August 5, 2006; five hours with All Star Electric on August 6, 2006; eight hours with All Star Electric on August 7, 2006; four hours with All Star Electric on August 8, 2006; ten hours with All Star Electric on August 9, 2006; and eleven hours with All Star Electric on August 10, 2006. Each work ticket provides a space for the authorized representative of the employer to print his or her title and to sign the work ticket to certify that the employee worked the stated hours on the stated day.

A review of those tickets purporting to represent the defendant's work hours at All Star Electric reflect that all except the August 10 ticket contain an authorization signature. Additionally, while the column on the ticket reflecting total hours worked contains the notation "11," the column reflecting the number of hours worked that day carries the notation "1." Ms. Choate acknowledged that the August 10 ticket did not contain the authorizing signature, but she was satisfied that the defendant worked that day. She explained that had he not worked, the employer would have notified her of his failure to appear. Additionally, when she billed the employer for Labor Finders' charges, the employer would have complained of being billed for services not received. She suggests that All Star posted no such complaints.

One of the other credibility issues raised by the defendant in his testimony is the fact that J.R. did not immediately report the defendant's criminal conduct. In fact, it was not until August 15, or five days later, that she reported the incident to law enforcement authorities. J.R. explained that she and/or her children were never out of the defendant's control for the first three days after the incident. She was concerned that if she attempted to report the criminal activity, the defendant would harm her or her children before help arrived. Additionally, because she had no transportation,[7] she was unable to leave. She testified that the first opportunity to report the defendant came on August 14, when the defendant finally left the motel in their vehicle to look for work. During that day, she mustered the courage to report what had happened to the motel desk clerk, but as she was trying to explain to the clerk her situation, she observed the defendant pull into the parking lot of the motel.

Her reporting opportunity finally came on the morning of August 15, when the

_____

[7]The couple had only one vehicle, and the defendant maintained control of that vehicle.

9

defendant dropped her off at the local welfare office. She had told the defendant the day before that she had an appointment which must be kept in order for the family to qualify for assistance, and the defendant consented to let her keep the appointment. The defendant dropped her off at the welfare office at approximately 8:00 on the morning of August 15, and left to seek work. J.R. immediately reported her situation to the receptionist at the front desk, who ushered her from the lobby into a room where she related her situation. Law enforcement personnel arrived at the scene and transported J.R. and her children to a safe house for their protection. During the investigative process, the law enforcement authorities took pictures of J.R.'s physical injuries,[8] and those pictures were introduced into evidence at trial.

The defendant also asserted in his testimony that J.R. did not tell the truth when testifying that everything occurred in front of the five-year-old, on the morning of August 10. J.R. testified that the five-year-old was home because she had not obtained the necessary records to enroll her in school. In support of his assertion that this testimony was not worthy of belief, the defendant produced as a witness, Mozell Gonsoulin, an employee of the St. Martin Parish School Board, who testified that the school records reflected that the five-year-old was enrolled in school on August 10, 2006, and dropped out on August 15, 2006. However, Ms. Gonsoulin had no first-hand knowledge concerning whether the five-year-old was at school on August 10. She drew her conclusions from the school records.

The defendant also provided the testimony of his mother, Maudry Auguillard, and his sister, Carol Auguillard, to establish the true demeanor of J.R. immediately after August 10 . The defendant's mother testified that she was told that J.R. was not

---

[8]The photographs reveal that J.R. sustained a contusion to her arm as well as scratches and bruises to her arm, elbow, shoulder, and neck.

feeling well on the evening of August 10, but when she questioned her, the victim said that she was all right. The defendant's sister testified concerning a brief visit she had with the defendant and J.R. on August 12, when the couple stopped at her house. She testified that J.R. did not appear to be in any distress and that she noticed nothing physically unusual about her. According to the defendant's sister, J.R. and the defendant were getting along fine, and there was nothing to suggest anything other than a normal relationship.

Thus, the record is replete with discrepancies. If believed, however, the testimony of J.R. establishes the elements of the offenses charged as well as the responsive verdicts. With regard to the attempted manslaughter offense, J.R.'s testimony together with the photographs of her injuries clearly establishes the elements of the charged offense as well as the responsive offense, including specific intent. With regard to the forcible rape offense, J.R.'s testimony clearly establishes the elements of the charged offense as well as the responsive offense. "In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding." *State v. Roca*, 03-1076, p. 11 (La.App. 5 Cir. 1/13/04), 866 So.2d 867, 874, *writ denied*, 04-583 (La. 7/2/04), 877 So.2d 143. *See also, State v. Rideaux*, 05-446 (La.App. 3 Cir. 11/2/05), 916 So.2d 488. Thus, the question in considering the evidence presented is whether the evidence presented by the defendant establishes such internal contradictions or irreconcilable conflicts with the physical evidence as to preclude the establishment of the elements of the offenses charged beyond a reasonable doubt by the testimony of J.R. alone. We find that it does not.

The evidence used to point out inconsistencies in J.R.'s testimony contains

11

inconsistencies itself. While the defendant asserts that he worked eleven hours on August 10, 2006, he does not explain how the children were retrieved from school on that day given Ms. Gonsoulin's testimony that the school day was over at 2:50 in the afternoon. Furthermore, Ms. Gonsoulin could only support the defendant's assertion that the five-year-old was in school on August 10 by school records. Even the defendant's work record is suspect given the fact that the August 10 work ticket was not properly authenticated; that despite working the days before August 10, the defendant did not work on the days thereafter—thus giving credence to J.R.'s assertion that he kept her and her children under close control in the days following the attacks.

The jury was also able to consider the defendant's criminal history in making credibility determinations. In his testimony, the defendant admitted to having pled guilty to accessory after the fact to first degree robbery in 1994, and having pled guilty to simple burglary and possession of stolen goods in 1996.

In his brief to this court, the defendant maintains that the facts of the instant case are similar to those in *State v. Papillion,* 467 So.2d 136 (La.App. 3 Cir. 1985), and *State v. Powell*, 438 So.2d 1306 (La.App. 3 Cir.), *writ denied*, 443 So.2d 585 (La.1983), wherein the court found insufficient evidence that forcible rape had occurred. However, we find that both cases are clearly distinguishable from the matter before us. In *Papillion*, the victim admitted that the defendant did not threaten him with bodily harm. In *Powell*, the court concluded that although the defendant slapped the victim several times in the face and threatened to kill her with a weapon under the car seat, the defendant did nothing to warrant a reasonable person to believe that resistance would not prevent the rape. The court noted that the victim never saw

12

the object under the seat. Also, the court found that there was no resistance. In the instant case, J.R. was traumatically, physically assaulted, only minutes prior to the rape, such that she was to the point mentally that she believed the defendant would kill her.

We find no merit in the defendant's first assignment of error.

### *Assignment of Error Number Two*

In this assignment of error, the defendant argues that the trial court erred in granting the state's motion directed at prohibiting him from attacking J.R.'s credibility by cross-examining her on the reasons for her dismissal from her last employment. Additionally, he complains that the state's examination of him regarding his reasons for exercising his right to trial was a violation of his right to a trial. He suggests that the combination of these errors requires a reversal of his convictions.

The state's motion at issue requested that the trial court prohibit the defendant from questioning J.R. and introducing extrinsic evidence concerning the reasons for her discharge from employment with her Florida employer on July 21, 2006.[9] The state argued to the trial court that the sole purpose of such questioning and extrinsic evidence was to attack J.R.'s character for truthfulness and was improper, inadmissible, and prohibited by La.Code Evid. art. 608(B). On the other hand, the defendant argues in his brief to this court, that the evidence is relevant because the state's entire case is based on J.R.'s testimony.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more

---

[9]J.R. was apparently discharged because of allegations of theft of money and falsifying receipts.

13

probable or less probable than it would be without the evidence." La.Code Evid. art. 401. Additionally, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation." La.Code Evid. art. 402. Furthermore, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La.Code Evid. art. 403.

In this case, other provisions of the Louisiana Code of Evidence preclude the admissibility of the defendant's evidence on this point. As previously noted, his sole purpose in offering the evidence was to attack J.R.'s credibility. In that regard, La.Code Evid. art. 607(C) provides that, "[e]xcept as otherwise provided by legislation, a party, to attack the credibility of a witness, may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony." However, the scope of Article 607(C) is limited by La.Code Evid. art. 608(B) which provides that "[p]articular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of crime as provided in Articles 609 and 609.1 or as constitutionally required." The jurisprudence has consistently held that the attacking of a witness' credibility by questioning him/her about their prior bad acts is prohibited by Article 608(B). *See State v. Meshell*, 567 So.2d 1181 (La.App. 3 Cir. 1990), *writ denied*, 572 So.2d 87 (La.1991); *State v. Ellis*, 94-599 (La.App. 5 Cir. 5/30/95), 657 So.2d 341, *writ denied*, 95-2095 (La. 12/8/95), 664 So.2d 421, and *writ denied*, 95-1639 (La. 1/5/96), 666 So.2d 300; *State v.*

14

*Manuel*, 94-87, 94-88 (La.App. 4 Cir. 11/30/94), 646 So.2d 489.

Thus, we find no merit in this portion of the assignment of error. Considering the foregoing analysis, we find that the trial court correctly determined that evidence of J.R.'s discharge from her prior employment was not admissible to attack her credibility as a witness.

The defendant also argues in this assignment of error that the trial court erred in allowing the state to examine him concerning his exercise of his right to trial. His complaint in this regard relates to questioning by the state concerning his prior convictions. Specifically, with regard to that issue, the following exchange took place between the prosecutor and the defendant:

> Q. Mr. Auguillard, you've admitted that you have at least two prior convictions.
>
> A. Yes, Sir.
>
> Q. Prior conviction - - both felonies.
>
> A. Yes, sir, which I paid my time for.
>
> Q. You made that point quite clear. 1994 and 1996, you made the point that you admitted those offenses. You pled guilty to those offenses.
>
> A. Yes, sir.
>
> Q. But, isn't it fair to say that you pled guilty to those offenses pursuant to a plea agreement where you knew what sentence you were going to get, correct?

At this point, the defendant's trial counsel objected that the question addressed issues past the convictions themselves, and the trial court sustained the objection. However, when the state renewed its questioning of the defendant, the following exchange occurred:

> Q. Mr. Auguillard, you understand that having two prior felony

15

convictions - - are you familiar with the concept in Louisiana of the habitual offender law?

A. Yes, sir.

Q. What is that?

A. When you get, I believe it's three convictions, three or more convictions, they get [to] multi-bill you.

Q. Multiple bill you?

A. Yes, sir.

Q. Meaning, the sentence is enhanced for these subsequent felonies.

From this point, the prosecutor questioned the defendant concerning his understanding that convictions in the charges at issue at the trial could subject the defendant to being billed as a habitual offender. However, neither the defendant nor his trial counsel objected to this line of questioning. Instead, the defendant acknowledged that he understood that possibility, but continued to assert that he was telling the truth when he testified that he did not commit the offenses.

Because the defendant failed to make a contemporaneous objection to this line of questioning, he is precluded from raising the issue on appeal. La.Code Crim.P. art. 841. Thus, we decline to consider this issue on appeal.

_____*Assignment of Error Number Three*

The trial court included within its instruction to the jury, a statement of the possible penalties for attempted second degree murder and aggravated rape. However, it did not instruct the jury as to the possible penalties for the possible responsive verdicts. The defendant, in this assignment of error, argues that the failure to do so was error.

In support of his argument, the defendant refers to this court's decision in *State*

16

*v. Myers*, 02-1296 (La.App. 3 Cir. 3/5/03), 839 So.2d 1183, *writ denied*, 03-991 (La. 10/10/03), 855 So.2d 330. However, we find that the *Myers* decision does not support the defendant's position. In *Myers*, the defendant asserted on appeal that the trial court erred in refusing to instruct the jury concerning the penalty for the responsive verdict of manslaughter, while at the same time, instructing the jury on the penalty for second degree murder. We found no merit in that assignment of error, concluding that it was within the trial court's discretion not to so instruct the jury.

Additionally, the defendant failed to make a contemporaneous objection to the jury instructions, and thus, the defendant is precluded from raising the issue on appeal. La.Code Crim.P. art. 841. Thus, we decline to consider this issue.

### Assignments of Error Numbers Four and Five

Both of these assignments of error address the sentences imposed. Basically, the defendant argues that the trial court failed to sufficiently comply with the requirements of La.Code Crim.P. art. 894.1, and that the sentences imposed by the trial court were excessive. In considering these assignments of error, we first note that the defendant's trial counsel filed a motion to reconsider the sentences imposed, stating simply that the sentences were excessive "under the circumstances." Louisiana Code of Criminal Procedure Article 881.1(E) provides in pertinent part that the failure on the part of a defendant filing a motion to reconsider the sentence imposed to "include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review." Because of the application of Article 881.1(E), our review is limited to a bare claim of excessiveness.

In *State v. Semien*, 06-841, pp. 11-12 (La.App. 3 Cir. 1/31/07), 948 So.2d 1189, 1197, *writ denied*, 07-448 (La. 10/12/07), 965 So.2d 397 (quoting *State v. Whatley*, 03-1275, pp. 5-6 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, 958-59), this court stated:

> The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. " '[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.' " *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Additionally,

> The fifth circuit, in *[State v.] Lisotta*, [98-646 (La.App. 5 Cir. 12/16/98),] 726 So.2d [57] at 58, stated that the reviewing court should consider three factors in reviewing the trial court's sentencing discretion:
>
> 1. The nature of the crime,
>
> 2. The nature and background of the offender, and
>
> 3. The sentence imposed for similar crimes by the same court and other courts.

*Whatley*, 867 So.2d at 958-59 (alterations in original).

The sentencing range for forcible rape is five to forty years, with at least two years of the sentence imposed without benefit of probation, parole, or suspension of

18

sentence. La.R.S. 14:42.1. The sentencing range for attempted manslaughter is not more than twenty years at hard labor. La.R.S. 14:31 and 14:27. Thus the defendant received the maximum possible sentence for both offenses. Additionally, the sentences were ordered to run consecutively, for a total sentence of sixty years.

At the sentencing hearing, the trial court stated the following with regard to the sentences imposed:

> In reviewing both your criminal history, which you've been classified as a third felony conviction -- this is your third felony conviction, I have no choice but to sentence you to the maximum. Your crime was particularly heinous. You attempted to break a woman's neck and/or choke them [sic] to death, according to the testimony. . . . And I apologize to your family because I know they are going to miss you, but there's two (2) reasons for these kind of crimes, these kind of sentences. Number one is to punish you for what you did, and number two is to prevent you from ever doing such a thing again. And to your mother, I'm sorry, but to you I'm not, okay.

Thus, the trial court addressed the nature of the crimes and the nature and background of the defendant, the first two factors as stated in *State v. Lisotta*, 98-646 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183.

In reviewing the sentences applying the third factor required in *Lisotta*, we find the following cases supportive of the sentences imposed: *State v. Stanton*, 05-812 (La.App. 4 Cir. 3/8/06), 929 So.2d 137, *writ denied*, 06-1381 (La. 1/26/07), 948 So.2d 161 (twenty years for attempted manslaughter, to be served concurrently with a forty-five-year sentence for attempted armed robbery); *State v. Perrilloux*, 03-917 (La.App. 5 Cir. 12/30/03), 864 So.2d 843, *writ denied*, 04-418 (La. 6/25/04), 876 So.2d 830 (twenty years for attempted manslaughter to run concurrently to a ninety-year sentence for armed robbery); *State v. Hawkins*, 06-739 (La.App. 5 Cir. 9/25/07), 968 So.2d 1082, *writ denied*, 07-2272 (La. 4/18/08), 978 So.2d 347 (forty years for forcible rape to run consecutively with a fifteen year sentence for crime against

19

nature); *State v. Jarrett*, 37,928 (La.App. 2 Cir. 12/10/03), 862 So.2d 440 (forty years for forcible rape to run consecutively with a thirty year sentence for aggravated burglary); and *State v. Brown*, 33,501 (La.App. 2 Cir. 6/21/00), 764 So.2d 197, *writ denied*, 00-2186 (La. 10/5/01), 798 So.2d 957 (forty years for forcible rape).

In the matter now before us, the defendant is a thirty-five-year-old fourth felony offender, with prior convictions for felony theft, attempted unauthorized entry of an inhabited dwelling, and simple escape, and with a significant misdemeanor criminal history, including multiple convictions for theft, shoplifting, and battery, in addition to convictions for numerous traffic violations. Further, the defendant was on unsupervised probation at the time of the instant offense.

While obviously on the high side of the sentencing scale, the sentences imposed by the trial court do not appear to be disproportionate to other sentences imposed in similar circumstances. As to the imposition of consecutive sentences, this court in *State v. Merritt*, 03-946, pp. 28-29 (La.App. 3 Cir. 3/17/04), 875 So.2d 80, 97-98, *reversed in part on other grounds*, 03-946 (La.App. 3 Cir. 10/13/04), 884 So.2d 1283 (alteration in original), stated:

> Imposition of consecutive sentences requires particular justification. *State v. Dunbar*, 94-1492 (La.App. 3 Cir. 5/31/95), 657 So.2d 429. "[T]he trial court must articulate particular justification for such a sentence beyond a mere articulation of the standard sentencing guidelines set forth in La.C.Cr.P. art. 894.1." *State v. Dempsey*, 02-1867, p. 5 (La.App. 4 Cir. 4/2/03), 844 So.2d 1037, 1040.

> > Among the factors to be considered are the defendant's criminal history, *State v. Ortego*, [382 So.2d 921, *cert. denied*, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980)]; *State v. Jacobs*, 493 So.2d 766 (La.App. 2d Cir.1986); the gravity or dangerousness of the offense, *State v. Adams*, 493 So.2d 835 (La.App. 2d Cir.1986), *writ denied*, 496 So.2d 355 (La.1986); the viciousness of the crimes, *State v. Clark*, 499 So.2d 332 (La.App. 4th Cir.1986); the harm done to the victims, *State v. Lewis*,

20

> 430 So.2d 1286 (La.App. 1st Cir.1983), *writ denied*, 435
> So.2d 433 (La.1983); whether the defendant constitutes an
> unusual risk of danger to the public, *State v. Jett*, 419 So.2d
> 844 (La.1982); the defendant's apparent disregard for the
> property of others, *State v. Parker*, 503 So.2d 643 (La.App.
> 4th Cir.1987); the potential for the defendant's
> rehabilitation, *State v. Sherer*, 437 So.2d 276 (La.1983);
> *State v. Lighten*, 516 So.2d 1266 (La.App. 2d Cir.1987);
> and whether the defendant has received a benefit from a
> plea bargain, *State v. Jett*, *supra*; *State v. Adams*, *supra*.

*State v. Coleman*, 32,906, p. 42 (La.App. 2 Cir. 4/5/00), 756 So.2d 1218, 1247-48, *writ denied*, 00-1572 (La.3/23/01), 787 So.2d 1010.

Although the consecutive sentences in this matter arose from a single course of conduct, there is no dispute but that the gravity and dangerousness of the offenses was great and could have resulted in J.R.'s death. The defendant's criminal history, while not necessarily indicative of a violent history, is certainly suggestive of the imposition of a severe penalty for the offenses committed—and the offenses themselves were vicious and heinous in nature.

Considering the sentences imposed strictly as a bare bones evaluation, and considering the factors under *Lisotta* and *Dunbar*, we do not find that the defendant's sentences are constitutionally excessive. Thus, we find no merit in these assignments of error.

### *Assignment of Error Number Six*

By this assignment of error, the defendant argues that the trial court erred in sentencing him immediately after denying his motion for post-verdict acquittal and without first obtaining a waiver of the statutory time delays. The basis for this argument is La.Code Crim.P. art. 873, which provides:

> If a defendant is convicted of a felony, at least three days shall
> elapse between conviction and sentence. If a motion for a new trial, or
> in arrest of judgment, is filed, sentence shall not be imposed until at least
> twenty-four hours after the motion is overruled. If the defendant

21

expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.

In *State v. Boyance*, 05-1068 (La.App. 3 Cir. 3/1/06), 924 So.2d 437, *writ denied*, 06-1285 (La. 11/22/06), 942 So.2d 553, this court recognized as an error patent the failure of the trial court to comply with the delays set forth in Article 873. However, relying on our decision in *State v. Shepherd*, 02-1006 (La.App. 3 Cir. 3/5/03), 839 So.2d 1103, this court concluded that the error was harmless because the defendant did not challenge his sentence on appeal and because he failed to allege any prejudice by the trial court's failure to wait the statutory time period before sentencing. Here, the defendant argues that failure to wait the statutory period was not harmless error because he did assert the excessiveness of his sentences on appeal.

The record before us reflects that the trial court rejected the post verdict judgment of acquittal motion and sentenced the defendant on the same day, October 29, 2007. After rejecting the motion, the trial court stated:

Next, we'll have the sentencing. And is there any evidence to be presented at sentencing? I have the pre-sentence investigation, which I allowed you to review. Is that correct, Mr. Piccione?

MR. PICCIONE: That's correct, Your honor. The defense has reviewed the pre-sentence investigation, and I went over it with the defense [sic].

The defendant did not expressly waive the delay, but he made no objection to sentencing at that time and was fully prepared to participate in sentencing, calling five witnesses to testify on his behalf.

This court has found an implied waiver in cases wherein the defendant did not voice an objection and continued to present a defense and/or participate at the sentencing hearing. *See State v. Giles*, 04-359 (La.App. 3 Cir. 10/6/04), 884 So.2d 1233, *writ denied*, 04-2756 (La. 3/11/05), 896 So.2d 62, and *State v. Taves*, 02-709

22

(La.App. 3 Cir. 1/15/03), 846 So.2d 1, *affirmed in part, reversed in part*, 03-518 (La. 12/3/03), 861 So.2d 144. Additionally, in *State v. Bishop*, 98-1147, p. 4 (La.App. 3 Cir. 2/3/99), 734 So.2d 674, 676, *writ denied*, 99-2499 (La. 2/11/00), 754 So.2d 932, this court held, "Although the trial court's failure to observe the twenty-four-hour delay is an error patent, we will generally not reverse the sentence unless the defendant demonstrates prejudice. *See State v. Dauzat*, 590 So.2d 768 (La.App. 3 Cir. 1991), *writ denied*, 598 So.2d 355 (La.1992)."

We find that although the trial court failed to observe the delay provided for in Article 873, the defendant failed to object to the trial court's failure, and was fully prepared to participate at the sentencing hearing of that day. Thus, based on the jurisprudence, the defendant impliedly waived the required delay in sentencing and failed to allege any prejudice as a result thereof. Therefore, we find no merit in this assignment of error.

### *Errors Patent*

In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. After reviewing the record herein, we find one such error patent.

The trial court failed to properly advise the defendant of the prescriptive period for filing post-conviction relief. The sentencing transcript reflects that the trial court informed the defendant that "you also have two (2) years post-conviction relief." Louisiana Code of Criminal Procedure Article 930.8 provides the defendant has two years *after the conviction and sentence become final* to seek post-conviction relief. Thus, we must remand the matter to the trial court with instructions that it inform the defendant of the correct time period for post-conviction relief.

23

## DISPOSITION

For the foregoing reasons, we affirm the defendant's convictions and sentences in all respects. We remand the matter to the trial court and direct the trial court to inform the defendant that pursuant to La.Code Crim.P. art. 930.8, he has two years from the date his judgments of conviction and sentence become final to apply for post-conviction relief. We instruct the trial court to give that notice to the defendant in writing within ten days of the rendition of this opinion and to file proof that the defendant received the notice in the record of these proceedings.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.